[Civ. No. 4335.   Fourth Dist.   Feb. 21, 1952.]

AURELIA SOLOMON Respondent, v. SALLY WALTON, Appellant.

[Civ. No. 4336.   Fourth Dist.   Feb. 21, 1952.]

AURELIA SOLOMON, Respondent, v. SUE ELLEN GOFF, Appellant.

[Civ. No. 4337.   Fourth Dist.   Feb. 21, 1952.]

SUSIE GOFF, Appellant, v. AURELIA SOLOMON et al., Respondents.

Miller & Sinclair, Elizabeth Murray and Max Bergman for Appellants.

T. R. Claflin, John M. Nairn and Kline, Barton & Stanley for Respondents.

MUSSELL, J.—Plaintiff, Aurelia Solomon, administratrix of the estate of Gabriel William Solomon, deceased, filed quiet title actions involving two separate parcels of real property in Kern County. Judgments were obtained by plaintiff quieting her title in both properties. Defendant Sally Walton appeals from the judgment in the first action which involves real property described in the briefs as the "Rosedale property" and defendant Sue Ellen Goff appeals from the judgment in the second action. The real property involved therein is referred to in the briefs as the "Buttonwillow property." Subsequent to the commencement of these actions, Sue Ellen Goff filed an action to quiet her title in the Buttonwillow property as against Aurelia Solomon. In this action plaintiff Sue Ellen Goff appeals from the judgment in which it was adjudged that plaintiff take nothing by her action except that a mortgage on the property was declared to be null and void. The three actions were tried at the same time.

Aurelia Solomon, a colored lady now over 69 years of age, is the mother of appellants Sally Walton and Sue Ellen Goff and 10 other living children. She and the decedent were married in Georgia, where they lived together for ap-

proximately 25 years and where they acquired 80 acres of land, together with personal property consisting principally of livestock, chickens, ducks and geese. Decedent sold the personal property for approximately $4,000, moved his family to Oklahoma, then to Imperial Valley in California and finally to Kern County. In 1931 he acquired real property on Oak Street in Rosedale and resided on the premises until 1946. In August of that year, with money obtained from the Oak Street property, decedent acquired the Rosedale property and lived there until his death on April 6, 1949.

On January 20, 1947, Aurelia Solomon and decedent executed a grant deed covering the Rosedale property to appellant Sally Walton. Pursuant to decedent's instructions, this deed was recorded by his attorney, T. R. Claflin, on January 23, 1947. The recorder returned the deed to Mr. Claflin and he retained it in his possession until the time of the trial. At the date of decedent's death, title to the Rosedale property was in the name of appellant Sally Walton.

On June 27, 1939, Miller and Lux, Inc., which was then the owner of the Buttonwillow property, entered into a contract with the decedent, Gabriel Solomon, for the purchase of the property. This contract provided that upon completion of the payments on the purchase price, the property should be taken in the name of Miss Sue Ellen Solomon, which was the maiden name of appellant Sue Ellen Goff. The contract was executed by the decedent, who made the first payment, and signed the agreement "Sue Ellen Solomon, by G. W. Solomon, purchaser." On January 5, 1943, when the total purchase price had been paid by the decedent, Miller and Lux, Inc. executed a deed covering the Buttonwillow property to appellant Sue Ellen Solomon, also known as Sue Ellen Goff, and title to the property remained in her name.

Appellants conceded at the trial that they had only one defense, i.e., that "the defendants furnished the consideration for the two pieces of property either by putting cash money in the deed or because the decedent was indebted to them for the support of other members of the family."

Appellant Sue Ellen Goff testified that she had paid the consideration for the Buttonwillow property through a gift from her paternal grandfather, and that she had loaned her father money at various times. However, she also stated that none of her money had gone into the property and that she held it as "administrator"; that she allowed her father to keep the deed for her; that she was present when the

decedent put the deeds to the property in a safe deposit box; that the decedent managed the property, executed the leases, paid the taxes and assessments and received the proceeds from the property. Appellant Sally Walton testified that she had loaned various sums of money to her father. However, she stated that none of her money had gone into the Rosedale property and that she held title to it as "administrator."

Witnesses for Aurelia Solomon testified that both parcels of property were purchased with funds which were community property of decedent and respondent, being derived mainly from decedent's farming activities; that the decedent and respondent lived on the Rosedale property; that the decedent arranged for the leasing of the Buttonwillow property and the sale of the cotton which was received as rent; and that the decedent was in possession of both parcels of property until his death. In appellants' opening brief it is conceded that while there was testimony on behalf of the appellants contradicting some of this evidence, the conflict must be resolved in respondent's favor on appeal.

There was substantial evidence from which the trial court could and did find that there was no consideration for said properties from the defendants Sally Walton and Susie Goff.

The trial court found that the decedent had transferred to defendants by deed the legal title to the property described in the first two actions; that said property was the community property of plaintiff Aurelia Solomon and the said decedent; that the deeds were not made with the intention to pass the title to the property; that there was no consideraion for said property from the defendants; and that there was no delivery of said deeds by decedent to defendants.

Appellants contend that the evidence is insufficient to support the trial court's findings that the deeds to them were not made with the intention to pass title to the property and that there was no delivery of the deeds.

In this connection, Aurelia Solomon testified that the decedent stated to her that he had put the Rosedale property in his daughter's name "because he was getting old, and because he was afraid of getting sued, and he wanted to get the old age pension."

Charles Solomon testified as to conversations had with his father (the decedent) in which his father expressed the fear of being sued and stated that he wanted to get on the old age pension; that decedent always referred to the properties

as his and that "it was always understood that both pieces of property were in my sisters' names because on account of the accidents and so he could get the old age pension."

A supervisor of the County Welfare Department testified that the decedent filed an application for old age pension on February 13, 1947; that the application was denied because the decedent "transferred real property to his daughter in January, 1947, receiving no remuneration. The value of the property was $13,750, less encumbrances of $6,500." The record does not indicate that any false statements were made by decedent in the application nor does it show that he concealed the fact that the property here involved was of record in the names of appellants.

On January 12, 1947, decedent wrote a letter to his daughter, Sally, in which he stated he was sending her some papers to sign, including a power of attorney; that he was having the Rosedale place "fixed" in her name just as he had the Buttonwillow farm in the name of Sue Ellen Solomon; that he hoped she would understand; that "all I ask of you if i Should past treat your dear mother Right Keep up ever thing Right and Keep the Lawers out. Never sell this land. I am putting ever thing in your name and Sue Ellen Hands. Should I pass treat the other children Equal Just do under thim as you wood thim do under you. Sign before Notary Public Just you Sally C. Smith. When you have Sign Send papers to me."

█ There was substantial evidence that the decedent treated the properties involved as his own at all times; that he remained in possession of it until his death; that it was understood by his family that the property was to go to Aurelia Solomon in case anything happened to him; that the deeds to both properties were kept by decedent and not delivered to appellants. While the evidence is in some respects conflicting, it is sufficient to support the findings as to decedent's intention and as to the nondelivery of the deeds.

█ Appellants argue that since the decedent transferred the Rosedale property to appellant Walton to illegally obtain an old age pension and applied for such a pension, it became the court's duty *sua sponte* to refuse any relief to the parties. This argument is based upon the assumption that the decedent fraudulently and illegally transferred his property. As noted, the evidence does not show that the decedent made any false statements in his application for a pension

or that the Welfare Department was misled in any way. In the opening statement made by appellants' counsel it was stated that appellants intended to prove that the decedent "was not a dishonest man who would convey his property away for the purpose of getting the old age pension." This statement, with the further statement by appellants' counsel at the beginning of the trial that "There is only one defense, that is, that there was consideration" indicates clearly that appellants did not contend that the properties involved were illegally or fraudulently conveyed by decedent. Moreover, this issue was not presented to the trial court, was not involved at the trial and no findings were made on it. ▮ The "unclean hands" doctrine must be raised in the trial court to be available as a defense and, cannot be raised for the first time on appeal. (*Scannell* v. *Murphy,* 82 Cal.App.2d 844, 849 [187 P.2d 790].) ▮ It has been held that where a defendant does not set up the defense of illegality, but such illegality appears from the case as made by either the plaintiff or the defendant, it becomes the duty of the court *sua sponte* to refuse to entertain the action. (*De Leonis* v. *Walsh,* 140 Cal. 175, 182 [73 P. 813].) However, the evidence presented in the instant case does not justify the conclusion that the trial court committed prejudicial error in failing to dismiss the action on such ground.

▮ Appellants next contend that the finding that legal title was transferred to appellant Walton is in conflict with the findings that there was no intention to pass title and no delivery of the deed. This contention is without merit. Unquestionably, the evidence is that deeds were executed by the decedent to the appellants herein and there is substantial evidence supporting the findings that the deed was not delivered to appellant Walton and that the deed was not made with the intention to pass title to the property. The term "legal title" has been defined as "one cognizable or enforceable in a court of law, or one which is complete and perfect so far as regards the apparent right of ownership and possession, but which carries no beneficial interest in the property, another person being equitably entitled thereto; in either case, the antithesis of 'equitable title.'" (Black's Law Dict., 3d ed., p. 1734.) In *Tobin* v. *Gartiez,* 44 Nev. 179 [191 P. 1063, 1064], it is said:

"The term 'legal title' does not have a strict legal meaning. A party may have the legal title to property although he is not the absolute owner in fee. In a broad sense it signi-

fies title in fee as well as any inferior estate that may be carved out of an estate in fee.''

It seems reasonable to conclude that the term ''legal title'' as used in the findings was intended as synonymous with the term ''record title'' and to describe a limited transfer of interest in the property. ██ The findings of the trial court must be sustained if they are supported by substantial evidence and all reasonable and legitimate inferences must be indulged toward upholding them. (*Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625].)

Appellants' final argument is that the court erred in failing to make findings as to the issues raised by the allegations in the complaint that appellant Walton promised to hold the property in trust; that the said promise was made with intent to deceive and did deceive the decedent and that decedent had confidence in the appellant Walton and in making the deed to her relied upon such confidence and upon the representations and promises made by appellant Walton. Six causes of action were set forth in the complaint and amendments thereto; all arose out of the same transactions and concerned the same property. ██ It is well settled that a plaintiff may plead and proceed to trial upon inconsistent causes of action when each arises out of the same transaction and when the proofs and remedies available in each are substantially the same. (*Figlietti* v. *Frick,* 203 Cal. 246, 249 [263 P. 534] ; *Royal Ins. Co.* v. *Mazzei,* 50 Cal.App.2d 549, 554 [123 P.2d 586].) There was no substantial evidence presented to the effect that appellant Walton promised to hold the property in trust, or that she deceived the decedent in any manner, which would sustain a finding of fraud or undue influence. ██ The evidence was sufficient to support judgments for Aurelia Solomon on the cause of action to quiet title and where, as here, the judgments are sustained by one of several counts in the complaint which is supported by substantial evidence, it will not be reversed because of the insufficiency of the evidence as to other counts of the complaint. (*Gogo* v. *Los Angeles County Flood Control Dist.,* 45 Cal.App.2d 334, 342 [114 P.2d 65].)

Judgments affirmed.

Barnard, P. J., and Griffin, J., concurred.