[Civ. No. 54547. First Dist., Div. One. Dec. 20, 1983.]

PARKMERCED COMPANY, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

COUNSEL

George Agnost, City Attorney, and John J. Doherty, Deputy City Attorney, for Defendant and Appellant.

Richard J. Kilmartin and Knight, Boland & Riordon for Plaintiff and Respondent.

OPINION

ELKINGTON, J.—In the action of Parkmerced Company, *a partnership,* against the City and County of San Francisco (the City), for a refund of real property taxes paid under protest, the superior court entered judgment against the City for "the principal sum of $30,400.00, interest of $5,142.67, or a total sum of $35,542.67." The City has appealed.

We find no merit in the appeal, and for the reasons we now state the judgment will be affirmed.

The appeal concerns the application to its factual context of the so-called "Proposition 13—Jarvis-Gann Amendment," added to the state's Constitution as Article XIII A, by vote of the People on June 6, 1978.

Section 1 of article XIII A provides, as here relevant:

"(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property."

And section 2 of Article XIII A, as pertinent to the appeal, states:

"(a) The full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property *when . . . a change in ownership has occurred after the 1975 assessment.* All real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation. . . . [Italics added.]

"(b) The full cash value base may reflect from year to year the inflationary rate not to exceed 2 percent for any given year. . . ."

Here, the City's assessor, deeming that such a *change in ownership* had occurred, reassessed real property of Parkmerced Company.

The principal, if not the only issue of the appeal, is whether the *change in ownership* found by the City's assessor did in fact occur.

Accordingly, our task is the determination of the constitutional provision's language, when "a change in ownership has occurred."

Such a purported determination has already been made by the state's Legislature and the State Board of Equalization.

Following Article XIII A's adoption and in implementation of it, the Legislature, effective June 24, 1978, enacted Revenue and Taxation Code section 110.6, which as here relevant provided:

"The Legislature finds and declares that a change in ownership of real property means all recorded and unrecorded transfers of legal or equitable title, except the transfer of *bare legal title, . . .*" (Italics added.)

Section 110.6's enactment was followed by the State Board of Equalization's Rule No. 462 (Cal. Admin. Code, tit. 18, § 462; effective July 3, 1978) which in pertinent part, recited:

"A transfer of equitable title is a change in ownership. . . .

"The following transfers do not constitute a change in ownership: (1) The transfer of *bare legal title. . . .*" (Italics added.)

Revenue and Taxation Code section 110.6 was repealed as of July 1, 1979. Then, effective as of July 10, 1979, the Legislature added Revenue and Taxation Code section 60, stating:

"A 'change in ownership' means a transfer of a present interest in real property, *including the beneficial use thereof,* the value of which is substantially equal to the value of the fee interest." (Italics added.)

■ The several definitions will reasonably be narrowed to the meaning that a "change in ownership" does *not* occur, upon the "transfer of bare legal title" to property, without a corresponding transfer of "the beneficial use thereof."

■ "The term 'legal title' has been defined as 'one cognizable or enforceable in a court of law, or one which is complete and perfect so far as regards the apparent right of ownership and possession, but which carries no beneficial interest in the property, another person being equitably entitled

thereto; in either case, the antithesis of "equitable title."' " (*Solomon* v. *Walton* (1952) 109 Cal.App.2d 381, 386 [241 P.2d 49].) Today it is not all uncommon for individuals, or corporations such as title companies, to hold "bare legal title" to property for the owner of its beneficial interest. ■ Such a transaction is of the nature of a resulting trust "which arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest," and the transferee has no duty other than to deliver the property to the person entitled thereto, upon demand. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 123, p. 5481.) And such a transfer, when made, will be of the property's "bare legal title" to the person already entitled to its "beneficial use."

The Legislature's, and State Board of Equalization's definitions, we opine, reasonably and properly comport with Article XIII A's intended meaning. We adopt and apply them here.

We are brought to a consideration of the uncontroverted material evidence of the case.

Parkmerced was a large residential community of San Francisco built many years ago and owned by Metropolitan Life Insurance Company.

Plaintiff Parkmerced Company, was and is a *partnership* whose general partners were two *corporations,* Parkmerced Corporation, and Datronics, Inc. The partnership was formed for the purpose of acquiring and operating Parkmerced. The partnership agreement provided in part that title to Parkmerced would be held by one of the partners, Parkmerced Corporation, as nominee for the partnership. As planned, the partnership on December 18, 1970, purchased the improvements and leased the land of Parkmerced from Metropolitan Life Insurance Company, and paid the consideration therefor. The transaction's documents were executed by Parkmerced Corporation "on behalf of the partnership," and title to the property was taken in Parkmerced Corporation's name as nominee of, and as authorized by, the partnership. The purchase of Parkmerced was thereby consummated.

Parkmerced Corporation, one of the partners, was wholly owned by one Helmsley, as was another corporation named Sierra Towers Corp. On June 24, 1975, the two Helmsley corporations entered into a merger agreement, with Sierra Towers Corp. becoming the "surviving" corporation. Sierra Towers Corp. thus became vested generally with Parkmerced Corporation's assets, including its partnership interest in Parkmerced Company. And Sierra Towers Corp., by virtue of the merger, became the record owner and

record lessee of Parkmerced, with no more than such attending rights and duties as were formerly those of Parkmerced Corporation.

Thereafter, July 30, 1976, Sierra Towers Corp. as successor by merger to Parkmerced Corporation executed and recorded a deed conveying Parkmerced of record to its beneficial owner, Parkmerced Company.

Concluding from the foregoing that "a change of ownership [of Parkmerced] had occurred after the 1975 assessment," within the meaning of Article XIII A of the state's Constitution, the City caused Parkmerced to be "reassessed" upward. The reassessment triggered the instant lawsuit.

 Here the superior court from the uncontroverted evidence reasonably inferred that Parkmerced Corporation and Sierra Towers Corp., following the merger, held no more than the "bare legal title" to Parkmerced, for the use and benefit of the partnership, Parkmerced Company. It follows, *as a matter of law*, that Parkmerced's transfer from Sierra Towers Corp. to Parkmerced Company, July 30, 1976, was of its "bare legal title." The City improperly "reassessed" Parkmerced, and the superior court's judgment was without error.

The City makes other contentions.

It first says that there is no evidence that the partnership, Parkmerced Company, had filed and published the fictitious name statement required by law. The contention is contrary to the City's "stipulation of facts"; we disregard it.

The parties otherwise concede error.

The judgment directed that "plaintiff recover from the defendant the principal sum of $30,460, *interest of $5,142.67.*" (Our italics.) Contrary to Revenue and Taxation Code section 5150, which fixes interest in such cases at a rate of 6 percent per annum from the date of filing of the claim for refund, the interest allowed by the judgment, we are told, was at the rate of 7 percent. The judgment will be modified in conformity with section 5150.

The judgment will be modified in accordance with the views we have expressed. As so modified, the judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied January 18, 1984.