[L.A. No. 32230. May 12, 1988.]

FONTANA UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v.
NANCY BURMAN, Defendant and Appellant.

COUNSEL

Wagner, Sisneros & Wagner and John J. Wagner for Plaintiff and Appellant.

Joseph R. Symkowick and Michael E. Hersher as Amici Curiae on behalf of Plaintiff and Appellant.

George W. Shaeffer, Jr., and Silver, Kreisler, Goldwasser & Shaeffer for Defendant and Appellant.

A. Eugene Huguenin, Jr., Kirsten L. Zerger, Diane Ross and Ramon E. Romero as Amici Curiae on behalf of Defendant and Appellant.

OPINION

ARGUELLES, J.—The decision of a school district to dismiss or to suspend a permanent certificated employee, such as a tenured teacher, for disciplinary or performance-related reasons is subject to review at the employee's request by a local commission on professional competence. The commission is charged by statute with the responsibility of determining whether the employee should or should not be dismissed or suspended, but its powers are circumscribed in part by the employing district's initial choice of sanction. Under Education Code section 44944, subdivision (c),[1] the commission has no power "to dispose of [a] charge of dismissal by imposing probation or other alternative sanctions" and may impose suspension as a sanction only if the employing district sought that result.

We are called upon in this case to decide whether the statute requires a local commission on professional competence to sustain a school district's notice of intent to dismiss a tenured elementary school teacher whenever the commission finds that one of the statutorily authorized grounds for dismissal exists, or whether such a commission has discretion to determine that dismissal is not warranted although cause for some measure of

---

· [1] All further statutory references are to the Education Code unless otherwise indicated.

discipline may exist. We conclude the Court of Appeal erred in holding the commission had no discretion and therefore reverse its order mandating the teacher's discharge.

## FACTS

The facts of this case are not complex and are undisputed on all material points. Nancy Burman, a tenured teacher employed for 14 years with the Fontana Unified School District in San Bernardino County (district) and then serving as a school principal, decided some time prior to December 8, 1983, to call in sick so that she could attend the first California landing of the space shuttle at Edwards Air Force Base on that day. She arranged for a third party to call her school on December 8 to report that she was ill and would not be at work. In fact, she was not ill and the information given at her request was false.

On the evening of December 7, Burman had dinner with the principal of another school. During the course of a long evening that extended into the following morning, Burman (a) invited a custodian from the friend's school to join the two women for dinner during the custodian's duty hours, (b) returned to her own school after dinner and invited the custodian on duty there to go along with the three to a nightclub, where the group remained for several hours and consumed alcoholic beverages, and (c) invited the others to accompany her to see the space shuttle land at 5 in the morning. The shuttle was delayed by computer problems, and the group left without seeing the landing. Burman returned to her house early that afternoon, where she was confronted by the district superintendent and other district personnel. She initially lied about where she had been that day and denied knowing where the other principal was, but confessed after a short period of time that she had not been ill and that the other principal was at that moment inside the house.

The district's board of education voted to discharge Burman for immoral conduct. Proceeding under section 44939, the district placed Burman on immediate suspension without pay and served notice on her that she would be dismissed 30 days later unless she demanded a hearing.[2] The notice set

[2] Section 44939 provides, in pertinent part: "*Upon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board, charging a permanent employee of the district with immoral conduct,* conviction of a felony or of any crime involving moral turpitude, with incompetency due to mental disability, with willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing school district, with violation of Section 51530, with knowing membership by the employee in the Communist Party or with violation of any provision in Sections 7001 to 7007, inclusive [sections repealed by Stats. 1981, ch. 470, § 11, p. 1738], *the*

forth four of the statutorily authorized grounds for dismissal of a teacher, charging Burman with immoral conduct, dishonesty, evident unfitness for service, and persistent violation of or refusal to obey district regulations.[3]

Burman timely requested a hearing under section 44944, subdivision (a), and a commission on professional competence was convened to consider the matter.[4] The commission, on a two-to-one vote, found her guilty only of

*governing board may, if it deems such action necessary, immediately suspend the employee from his duties and give notice to him of his suspension, and that 30 days after service of the notice, he will be dismissed, unless he demands a hearing:*" (Italics added.)

This portion of section 44939 augments, at the option of a district and in the limited circumstances specified, the procedures found in section 44934 for disciplining a permanent employee. Section 44934 similarly requires a written statement of charges and 30 days notice of the intent to take disciplinary action, but incorporates by reference the full (and more extensive) range of statutory grounds for imposing discipline (see § 44932, subd. (a)) and authorizes proceedings to suspend the employee for a specified period of time rather than to dismiss. Immediate suspension of the employee without pay before expiration of the 30-day notice period is available only if the district institutes a dismissal proceeding based upon one of the grounds specified in section 44939.

[3] The grounds for dismissal of a teacher are specified in section 44932, subdivision (a): "No permanent employee shall be dismissed except for one or more of the following causes: [¶] (1) Immoral or unprofessional conduct. [¶] (2) Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188, Statutes of 1919, or in any amendment thereof. [¶] (3) Dishonesty. [¶] (4) Incompetency. [¶] (5) Evident unfitness for service. [¶] (6) Physical or mental condition unfitting him to instruct or associate with children. [¶] (7) Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him. [¶] (8) Conviction of a felony or of any crime involving moral turpitude. [¶] (9) Violation of Section 51530 of this code or conduct specified in Section 1028 of the Government Code, added by Chapter 1418 of the Statutes of 1947. [¶] (10) Violation of any provision in Sections 7001 to 7007, inclusive, of this code [sections repealed by Stats. 1981, ch. 470, § 11, p. 1738]. [¶] (11) Knowing membership by the employee in the Communist Party. [¶] (12) Alcoholism or other drug abuse which makes the employee unfit to instruct or associate with children."

Subdivision (b) of section 44932 provides in turn that, unless the question is governed by a collective bargaining agreement adopted in accordance with Government Code section 3543.2, a permanent employee may be suspended for unprofessional conduct, a ground that under subdivision (a)(1) may also support the dismissal of such an employee. These two provisions are supplemented by section 44933, which allows the suspension or the dismissal of a permanent employee for unprofessional conduct consisting of acts or omissions other than those specified in section 44932.

[4] Subdivision (b) of section 44944 specifies the composition of the body charged with conducting the hearing called for in the section and provides, in pertinent part: "The hearing provided for in this section shall be conducted by a Commission on Professional Competence. One member of the commission shall be selected by the employee, one member shall be selected by the governing board, and one member shall be an administrative law judge of the Office of Administrative Hearings who shall be chairperson and a voting member of the commission and shall be responsible for assuring that the legal rights of the parties are protected at the hearing. . . . [¶] The member selected by the governing board and the member selected by the employee shall not be related to the employee and shall not be employees of the district initiating the dismissal or suspension and shall hold a currently valid credential and have at least five years' experience within the past 10 years in the discipline of the employee."

the dishonesty charge. The charges of immoral conduct, evident unfitness for duty, and persistent violation of or refusal to obey reasonable regulations of the district were not sustained.

Although the commission made a finding that "[c]ause exists for disciplinary action against respondent under Education Code Section 44932(a)(3), based upon the charge of dishonesty," it found dismissal unwarranted. The commission noted that Burman had a previously unblemished record and made an express finding that her actions "represented isolated conduct . . . not likely of repetition under any set of circumstances in the future." The commission also found by way of mitigation that Burman had not been involved in any prior disciplinary action, that she had received no prior warnings or counseling with regard to abuse of sick leave or her dealings with school custodians, that there was no evidence of any prior abuse of sick leave, and that her evaluations as a district employee had been satisfactory or better. On this record, the commission determined that Burman was not unfit to continue as a teacher and concluded that "the penalty of dismissal should not be imposed."[5]

The district sought review in the superior court by petition for a writ of mandate.[6] The petition named only Burman as the respondent, and she demurred on the ground that the commission was the proper party

---

[5] The commission observed that it would have unanimously found Burman "guilty of unprofessional conduct within the meaning of Sections 44932(a)(1) and 44933"—apparently on the basis of her initial dishonest responses to the superintendent's questions and what it seems to have viewed as "questionable conduct" with the custodians—and would have ordered her suspended had that course been open to it. As the district had sought only Burman's dismissal, the proceeding was not "a suspension proceeding" within the meaning of section 44944, subdivision (c), and the commission lacked the authority to order Burman suspended.

The commission's finding that "[c]ause exists for disciplinary action against respondent under Education Code Section 44932(a)(3), based upon the charge of dishonesty" was therefore technically incorrect—as suspension, which the commission deemed the appropriate discipline, is available only in a proceeding under section 44932, subdivision (b) or section 44933, and cause may have existed for disciplinary action under those statutes, not under subdivision (a) of section 44932. We view the commission's "finding" as an attempt to specify the proper *substantive* ground for the discipline it thought appropriate, not as a determination in favor of dismissal inconsistent with its express conclusion that Burman was not unfit to continue as a teacher.

[6] Section 44945 specifies that "[t]he decision of the Commission on Professional Competence may, on petition of either the governing board or the employee, be reviewed by a court of competent jurisdiction in the same manner as a decision made by a hearing officer under Chapter 5 (commencing with section 11500) of Part 1 of Division 3 of Title 2 of the Government Code. . . ." Government Code section 11523 in turn states that "[j]udicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure . . . ." A proceeding in administrative mandamus commenced by a petition under Code of Civil Procedure section 1094.5 is the proper avenue for review of a decision rendered under section 44944. (*San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 283 [185 Cal.Rptr. 203].)

respondent and the district had accordingly failed to join an indispensable party within the applicable statute of limitations. The trial court overruled the demurrer and considered the merits of the matter, exercising its independent judgment on the evidence as required by section 44945. The court incorporated the commission's findings and decision into its own statement of decision and entered judgment denying the writ, also awarding Burman $1,500 in costs and attorney fees.

The district appealed on the merits, and Burman cross-appealed to challenge the overruling of her demurrer and the trial court's failure to award her a greater amount in costs and attorney fees. The Court of Appeal reversed, rejecting Burman's contention that the commission was an indispensable party and concluding that under section 44944, subdivision (c), neither the commission nor the trial court had any alternative but to rule that Burman should be dismissed "once a cause for discipline under Education Code section 44932, subdivision (a)(3) had been found . . . to exist . . . ." We granted review to determine whether the Court of Appeal properly interpreted the statute.

## DISCUSSION

### 1. *Commission Discretion*

■ The principal question on this appeal is whether the commission had the discretion to determine that Burman should not be dismissed as a permanent employee once it found her "guilty of dishonesty within the meaning of Education Code Section 44932(a)(3)," or whether, as the Court of Appeal held, her dismissal was mandatory once cause for discipline on that ground had been found to exist. Resolution of this question requires us to determine the proper interpretation of subdivision (c) of section 44944, a task we cannot perform without a clear understanding of the statutory framework within which a commission on professional competence acts. We turn first to an examination of that subject.

A. *The Statutory Framework.* The provisions of the Education Code allow a district substantial leeway in determining when to take disciplinary action against a permanent employee and what action to take. Except in the case of an employee charged with certain sex offenses (see §§ 44010, 44940), a district is not required to take action. In all other situations, the district has discretion. It *may,* if it so chooses, initiate disciplinary proceedings under section 44934. It *may,* if it so chooses and if one of the grounds specified in subdivision (a) of section 44932 exists, seek the dismissal rather than the suspension of an employee. And it *may,* if it so chooses and if the ground for dismissal is also one of those specified in section 44939,

immediately suspend the employee without pay pending the disposition of the dismissal proceeding. Its discretion is limited only by the requirement that the ground asserted as the basis for taking disciplinary action be one authorized by statute *and* by the provision for review of its decision by a commission on professional competence if the employee requests a hearing.

Sections 44932 and 44933 specify the grounds for dismissal and suspension of teachers. Subdivision (a) of section 44932 identifies 12 specific grounds—including immoral or unprofessional conduct and, most relevant for present purposes, dishonesty—for which a permanent employee may be dismissed. It states, in fact, that "[n]o permanent employee shall be dismissed *except for* one or more of [those] causes . . ." (italics added). Subdivision (b) provides in turn that a permanent employee may be suspended on grounds of unprofessional conduct, and section 44933 indicates that either dismissal or suspension may be sought on a charge of unprofessional conduct consisting of acts or omissions other than those enumerated in section 44932.[7] In the present case, the district proceeded solely on the basis of subdivision (a) of section 44932 and sought only to dismiss, not to suspend, Burman.

The distinction between charges brought under subdivision (a) of section 44932 and those brought under subdivision (b) of that section—and between an attempt under either section 44932 or 44933 to dismiss an employee and an attempt under the statutes only to suspend—is significant. Subdivision (c) of section 44944 offers a commission on professional competence only three choices in resolving a disciplinary proceeding. It must determine either that the employee should be dismissed, that the employee should be suspended, or that the employee should not be dismissed or suspended. And the subdivision expressly provides: "The commission shall not have the power to dispose of [a] charge of dismissal by imposing probation or other alternative sanctions. The imposition of suspension . . . shall be available only in a suspension proceeding authorized pursuant to subdivision (b) of Section 44932 or Section 44933."[8]

---

[7] Although "unprofessional conduct" is identified in section 44932 as one of the 12 specific grounds for which a permanent employee may be dismissed, it appears to have a broader import than the others. The phrase refers generally to conduct demonstrating unfitness to teach (*Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1174 [197 Cal.Rptr. 390]), and a particular act or omission on the part of a teacher may constitute unprofessional conduct as well as one of the other enumerated grounds. (*Id.* at p. 1175; see *Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 551 [261 P.2d 261].) Section 44933—by providing that unprofessional conduct may consist of "acts or omissions other than those specified in section 44932"—suggests that each of the specific acts or omissions listed in subdivisions (a)(2) through (a)(12) of section 44932 may also amount to unprofessional conduct supporting either a dismissal proceeding under subdivision (a)(1) or a suspension proceeding under subdivision (b).

[8] Subdivision (c) of section 44944 provides in full: "The decision of the Commission on Professional Competence shall be made by a majority vote, and the commission shall prepare

The statutory scheme thus limits a commission to only two options where, as here, a school district seeks only to dismiss a teacher under subdivision (a) of section 44932. The commission then may not impose suspension, nor may it achieve the same result by ordering dismissal and staying its order on conditions amounting to probation.[9] It may only choose to dismiss or not to dismiss.

In the present case, the commission chose not to dismiss. Although the trial court upheld the commission's action, the Court of Appeal found the decision improper, ruling that if a commission finds that cause for discipline exists, then, as a matter of law, discipline must be imposed, and that, in light of the statutory limitations on the commission's power to impose suspension, the discipline here could only be dismissal. Burman contends

a written decision containing findings of fact, determinations of issues, and a disposition which shall be, solely: [¶] (1) That the employee should be dismissed. [¶] (2) That the employee should be suspended for a specific period of time without pay. [¶] (3) That the employee should not be dismissed or suspended. [¶] The decision of the Commission on Professional Competence that the employee should not be dismissed or suspended shall not be based on nonsubstantive procedural errors committed by the school district or governing board unless the errors are prejudicial errors. [¶] The commission shall not have the power to dispose of the charge of dismissal by imposing probation or other alternative sanctions. The imposition of suspension pursuant to paragraph (2) shall be available only in a suspension proceeding authorized pursuant to subdivision (b) of Section 44932 or Section 44933. [¶] The decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board. [¶] The board may adopt from time to time such rules and procedures not inconsistent with provisions of this section as may be necessary to effectuate this section. [¶] The governing board and the employee shall have the right to be represented by counsel."

[9] The latter possibility, in fact, was foreclosed by the Legislature in direct response to a Court of Appeal decision (*Governing Board* v. *Commission on Professional Competence (Pickering)* (1977) 72 Cal.App.3d 447 [140 Cal.Rptr. 206]) holding that the power to dismiss included the power to stay an order of dismissal on conditions of probation, effectively resulting in suspension rather than dismissal. (See *Powers* v. *Commission on Professional Competence* (1984) 157 Cal.App.3d 560, 580-581 [204 Cal.Rptr. 185].) Within six months of the *Pickering* decision, a bill was introduced to "clarify that the commission is limited in its disposition of the case to dismissing the employee or not dismissing the employee" (Legis. Counsel's Dig., Assem. Bill No. 2401, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 324), and subdivision (c) of section 44944 was amended to provide: "The commission shall not have the power to dispose of the charge of dismissal by imposing probation, suspension of a dismissal or a nondismissal, or other alternative sanctions." (Stats. 1978, ch. 1172, § 1, p. 3782.)

Although the section was later amended by the Hughes-Hart Educational Reform Act of 1983 (Stats. 1983, ch. 498, § 59, p. 2086) to read in its present form, and the explicit bar against "suspension of a dismissal or a nondismissal" was eliminated, the legislative history indicates that no substantive change was intended. The Senate's attempt to give a commission on professional competence the authority to dispose of a charge of dismissal by suspending the employee (Sen. Bill No. 813 (1982-1983 Reg. Sess.) as amended May 16, 1983) was rejected by the Assembly in favor of the language of the 1978 amendment (Assem. Amend. to Sen. Bill No. 813 (1982-1983 Reg. Sess.) June 8, 1983), and the final bill reported out of conference established the present statutory scheme—for the first time differentiating between dismissal and suspension charges, and expressly limiting the power to suspend to proceedings seeking that end. In light of that limitation, no explicit prohibition against "suspension of a dismissal or a nondismissal" was necessary to effectuate the legislative intent.

that the Court of Appeal misinterpreted section 44944, subdivision (c) as barring the exercise of discretion and requiring a commission to authorize dismissal even when the commission concludes that dismissal is inappropriate. The proposition that section 44944, subdivision (c) compels the imposition of discipline, when a finding is made that cause for discipline exists, thus lies at the heart of this case. We turn then to that question.

B. *Education Code Section 44944.* We are guided by numerous precepts of statutory construction as we approach the task of determining whether subdivision (c) of section 44944 should be interpreted to bar the exercise of discretion by a commission on the propriety of the sanction of dismissal where cause for discipline is established. ■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155] [quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]].)

■ The "words [of the statute] themselves" do not compel the interpretation advanced by the Court of Appeal. Section 44932 provides that a teacher cannot be dismissed unless certain grounds are found to exist; it does not provide that a teacher *must* be dismissed if one of those grounds is found. Similarly, section 44944 provides that the commission is to decide whether a teacher should or should not be dismissed; it does not provide that the commission *must* dismiss a teacher if it finds that one of the statutory grounds exists.

■ Viewed in the context of the entire statutory scheme, a fair reading of section 44944 recognizes the discretion given both an employing school district and a commission. The district may determine when to seek disciplinary action and what discipline to seek. It may, by choosing to pursue only a dismissal sanction, preclude the commission from imposing

suspension.[10] And it may, by invoking the procedures of section 44939, accompany the notice of dismissal with an immediate suspension of the employee without pay. But nothing in the statutory scheme indicates that the commission must be bound by the district's choice to the extent that it is required to approve an employee's dismissal if it is not persuaded, in the exercise of its discretion, that an offense is serious enough to warrant that step.

■ We thus cannot accept the proposition that discipline *must* be imposed, when a finding is made that cause for discipline exists. The Court of Appeal thought this the clear intent of the 1978 legislative nullification of the decision in *Pickering, supra,* 72 Cal.App.3d 447, that a commission had the power to stay an order of dismissal. But the Legislature acted only to bar a commission from suspending the impact of its order once the statutory determination was made "[t]hat the employee should be dismissed" or "[t]hat the employee should not be dismissed . . . ." Nothing in either the 1978 or later amendments purported to limit a commission's ability to determine that, although cause for *some* discipline existed, the harsh sanction of *dismissal* was not warranted.[11]

■ In addition to the general rules for ascertaining legislative intent previously noted, "[i]t is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) The judicial construction given words and phrases are presumed adopted when those portions of an existing statute are used in a subsequent legislative enactment. (*Ibid.; People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33].)

This presumption facilitates our examination of a commission's role in disciplinary matters. We held in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 229-230 [82 Cal.Rptr. 175, 461 P.2d 375], that the

---

[10] By way of example, the commission's inability here to impose discipline on an employee who plainly merited some measure of punishment flowed not from the commission's exercise of a power it did not possess (i.e., to choose not to dismiss Burman) but from the district's decision to take an all or nothing tack—exercising its power to suspend Burman immediately without pay and seeking perhaps to preclude the commission from determining, as it indicated it would have, that suspension was the more appropriate sanction for Burman's misconduct.

[11] Indeed, the fact that the Legislature acted in 1978 to foreclose a commission from suspending "a nondismissal," as well as a dismissal, suggests on the face of things that a commission had been and remained empowered to choose not to dismiss, and was precluded only from attempting to make other than an all-or-nothing decision.

phrase "immoral or unprofessional conduct," one of the statutory grounds for dismissing or suspending a permanent employee (§ 44932, subd. (a)(1)), embraced only conduct demonstrating unfitness to teach. Reasoning that the phrase was otherwise too vague and too broad to withstand constitutional challenge, we held that the alleged misconduct of a tenured teacher should be measured against seven criteria in determining whether dismissal was warranted: (1) the likelihood that the conduct would recur; (2) the existence of aggravating or extenuating circumstances; (3) the impact of publicity; (4) the effect on teacher-student relationships; (5) any disruption of the educational process; (6) the employee's motive for the conduct; and (7) the proximity or remoteness in time of the conduct. (*Id.* at p. 230; see also *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 696-697 [139 Cal.Rptr. 700, 566 P.2d 602]; *San Dieguito High School Dist., supra,* 135 Cal.App.3d at p. 284.) The Legislature must be presumed to have adopted this construction in its continued use of the identical phrase in both the 1978 and the more extensive 1983 amendments to the Education Code.

 Application of this standard indicates that a commission has broad discretion in disciplinary matters. Its role is not merely to determine whether the charged conduct in fact occurred, but to decide whether that conduct—measured against the *Morrison* criteria (*supra,* 1 Cal.3d 214)—demonstrates unfitness to teach and thus constitutes "immoral or unprofessional conduct" within the meaning of the statute.[12]

We find other provisions relevant to our inquiry in section 44944. Subdivision (c) itself does not merely restrict a commission's options for the disposition of a particular disciplinary proceeding; it also requires a commission to issue "a written decision containing findings of fact, [and] determinations of issues . . . ." (§ 44944, subd. (c).) That a commission must determine issues as well as make findings of fact supports our conclusion that its role is not limited to resolving the factual question whether the charged conduct occurred, but that it is to resolve the ultimate issue presented by a disciplinary proceeding: whether the conduct demonstrates such unfitness to teach as to warrant terminating the teacher's employment.[13]

---

[12] Although *Morrison* concerned itself only with the proper definition of "immoral or unprofessional conduct," its analysis requires an identical approach to an attempt to discipline a permanent employee on grounds of dishonesty, as here. Dishonest conduct may range from the smallest fib to the most flagrant lie. Not every impropriety will constitute immoral or unprofessional conduct, and not every falsehood will constitute "dishonesty" as a ground for discipline.

[13] Still other subdivisions of section 44944 tend to confirm the discretionary role of a commission. Subdivision (a) subjects proceedings before a commission to the provisions of the Administrative Procedure Act (Gov. Code, § 11500 et seq.), with minor exclusions and modifications not relevant to present purposes. Among the provisions so incorporated is Government Code section 11506, subdivision (d), which allows a respondent to file a statement in mitigation even if no defense to the charges is tendered. This permission would be less rele-

That a commission must play a discretionary role is also suggested by contrasting the proceedings for the dismissal or suspension of permanent, tenured employees with those now in effect for the dismissal or suspension of probationary, nontenured employees. A probationary employee may be dismissed during the school year for unsatisfactory performance or for cause or, as an alternative to dismissal, may be suspended without pay for a specified period of time. (§ 44948.3, subds. (a), (b).)[14] The employee may demand a hearing, as in the case of a permanent employee, but a commission on professional competence is not convened. Instead, the hearing may be conducted by an administrative law judge, who prepares a "recommended decision" for the governing board of the employing school district. (§ 44948.3, subd. (a)(2).) The final decision, however, is that of the district. The commission occupies a position of greater import in proceedings involving a permanent employee, for "[t]he decision of the Commission on Professional Competence shall be deemed to be the final decision of the governing board." (§ 44944, subd. (c).) The Legislature was quite able to specify a procedure placing the final disciplinary decision in the hands of a teacher's employer when it so chose. The significantly different provisions of section 44944 necessarily betoken a greater and a discretionary role for a commission in disciplinary proceedings involving a permanent employee.

Given the structure of the proceedings and, in particular, the words of the statute and the need to measure conduct against the criteria specified in *Morrison, supra,* 1 Cal.3d 214, we conclude the Legislature intended more of a commission on professional competence than a simple determination whether cause exists for disciplinary action, resulting inexorably in the imposition of the sanction previously selected by the employing school district. We avoid surplusage, give effect to each portion of the statute and harmonize each part of the entire statutory scheme by recognizing that the commission retains discretion to choose between the options given it by statute.

---

vant in commission proceedings if a commission did not retain the power to take mitigating factors into consideration and to determine that, under the *Morrison* criteria, dismissal was not an appropriate penalty even though a particular charge of misconduct was found to be true. Absent such discretion, there would also seem to be less purpose to the requirement that the members of the commission selected by the district and the employee be credentialed teachers with substantial recent experience in the employee's particular field. (§ 44944, subd. (b).)

[14]Section 44948.3 (adopted by Stats. 1983, ch. 498, § 61, p. 2090) applies only to probationary employees whose terms commenced during or after the 1983-1984 fiscal year or who are employed by a school district having an average daily attendance of at least 250 pupils. Other probationary employees have greater rights, commensurate with those accorded permanent employees, as far as disciplinary proceedings during the school year are concerned (see §§ 44932, subd. (b), 44948), but are subject to procedures similar to those specified in section 44948.3 in challenging a denial of reemployment for the succeeding school year. (See § 44948.5.)

This interpretation of the statute works no great infringement on the ability of school districts to govern their affairs and to control the conduct of their permanent employees. The same conduct, in the judgment of the employing district, may constitute grounds for suspending or for dismissing a permanent employee, and nothing in the statutory scheme limits the ability of a district to pursue alternative sanctions, either simultaneously (cf. *Von Durjais* v. *Board of Trustees* (1978) 83 Cal.App.3d 681, 686-687 [148 Cal.Rptr. 192]; *Board of Education* v. *Commission on Professional Competence (Smyth)* (1976) 61 Cal.App.3d 664, 670 [132 Cal.Rptr. 516]) or, as principles of double jeopardy do not bar successive administrative proceedings to revoke a license (see *Kendall* v. *Bd. of Osteopathic Examiners* (1951) 105 Cal.App.2d 239, 248-249 [233 P.2d 107]; cf. *Rinaldo* v. *Board of Medical Examiners* (1932) 123 Cal.App. 712, 716 [12 P.2d 32]), in succession.[15]

We conclude that a commission on professional competence is empowered to exercise its collective wisdom and discretion to determine that dismissal is not appropriate in a given case. The statutes do not preclude a district from preserving its options by seeking alternative sanctions simultaneously or successively, and no other reading of the statutes is capable of fully implementing the balance struck by the Legislature between the discretion given districts to select the degree of discipline and limit the options available to the commission, and the protection from arbitrary action accorded their permanent employees.[16]

---

[15] Although generally "no decision relating to the dismissal or suspension of any employee shall be made based on charges or evidence of any nature relating to matters occurring more than four years prior to the filing of the notice" (§ 44944, subd. (a)), this limitation seems to be more of a bar against the use of stale information to buttress a current charge than a true statute of limitations restricting a district's options. To the extent that it might be taken as an explicit statute of limitations, it would seem inapplicable to a successive application based upon the same charge of misconduct and differing only as to the proposed discipline.

Limitations questions in administrative matters are properly evaluated under rules similar to those employed in judicial proceedings. (See 2 Cal.Jur.3d, Administrative Law, § 144, p. 366.) Given that the identical conduct would be at issue in the two proceedings and that the employee would have received timely notice of the charges, could complain of no prejudice in gathering evidence and could ordinarily point to no bad faith or unreasonable conduct on the part of the employing district, the doctrine of equitable tolling would generally preserve a district's right to proceed in this fashion. (See *Addison* v. *State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941].) Complaints of stale claims would be more appropriately subject to a laches analysis than a strict statute of limitations bar. (Cf. *Gore* v. *Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184 [167 Cal.Rptr. 881].)

[16] By recognizing that alternative sanctions may be sought either simultaneously or successively, at a district's option, we harmonize the discretion accorded school districts to select the appropriate degree of discipline and that given a commission on professional competence. Were a school district limited to a single disciplinary proceeding, practical considerations might lead it to charge in the alternative in many, if not most, cases, for to seek an employee's dismissal alone might lead to no discipline being imposed and a district might deem suspension of the employee preferable to that outcome. But to charge in the alternative in every case would vest the commission with the power to opt for suspension in each case—a result that is

## 2. *Commission as Indispensable Party*

■ As we reverse the Court of Appeal on the question of commission discretion, we need not, strictly speaking, address Burman's contention that her demurrer to the district's mandamus petition should have been granted because the commission was an unjoined, indispensable party. We did not limit our grant of review under California Rules of Court, rule 29.2(b), to the discretion issue, however, and we think it appropriate to speak to the indispensable party question for the guidance of the bench and bar in future cases, for on this point we agree with the Court of Appeal and find Burman's contentions unpersuasive.

We must acknowledge that Burman's arguments have facial appeal. The district's challenge to the commission's decision was properly brought under Code of Civil Procedure section 1094.5 (*San Dieguito Union High School Dist., supra,* 135 Cal.App.3d at p. 283), and that statute specifies only two possible dispositions of such a petition: "The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. . . ." (Code Civ. Proc., § 1094.5, subd. (f).) Burman accordingly contends only the commission could be the subject of a judgment ordering it as respondent to set aside its decision (see *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 255 [115 Cal.Rptr. 524 P.2d 1281] [only the California Coastal Commission and its members could be proper subjects of petition for writ of administrative mandamus]) and asserts that the district's petition should have been dismissed because the statute of limitations specified in Government Code section 11523 expired without the joinder of the commission as an indispensable party. (See *Kupka* v. *Board of Administration* (1981) 122 Cal.App.3d 791, 794-795 [176 Cal.Rptr. 214]; *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 502 [157 Cal.Rptr. 190].)

---

at odds with the legislative limitations on the options available to a commission. The availability of successive proceedings allays these concerns.

Nor need we fear that the authority to institute successive proceedings would be invoked routinely to the prejudice of district employees guilty of only minor misconduct. If a district opted to seek first only the dismissal of an employee and its attempt was not sustained by a commission, it would be required to pay the costs of the hearing and the employee's attorney fees (§ 44944, subd. (e)), and the imposition of any lesser discipline would be delayed. Moreover, an employee suspended without pay whose dismissal was then not allowed would be entitled to compensation for lost wages even if some lesser measure of discipline were later permitted. (See *Von Durjais, supra,* 83 Cal.App.3d at p. 687.) These potential costs, and the simple inefficiency of moving separately rather than in a single proceeding, should suffice to limit exercise of the authority to cases in which a district held an abiding belief that no discipline less than dismissal was warranted, while at the same time preserving the district's ability to ensure that it could seek the imposition of some discipline if the commission disagreed with the initial judgment on the appropriate degree of discipline and if the district determined that a successive proceeding was warranted.

Facial appeal is all Burman's arguments have, however, for she overlooks the unusual nature of a commission on professional competence. It is not a standing body; it is an ad hoc group more akin to an arbitration tribunal, two of whose members are named by the parties to the dispute. (§ 44944, subd. (b).) It is a nominal, transitory body whose residence is immaterial for venue purposes in an administrative mandamus proceeding. (*Sutter Union High School Dist.* v. *Superior Court* (1983) 140 Cal.App.3d 795, 798 [190 Cal.Rptr. 182].) Its decision, once made, becomes the decision of the employing school district (§ 44944, subd. (c)), and the commission serves no identifiable function in the remainder of the review process. (Cf. *Compton* v. *Board of Trustees* (1975) 49 Cal.App.3d 150, 157-158 [122 Cal.Rptr. 493].) It is a different type of entity than the usual respondent named in a mandamus matter, and although it may be—and usually is—named in proceedings for review of a decision made under section 44944, it is not an indispensable party whose absence is fatal to the court's jurisdiction.

Although Code of Civil Procedure section 1094.5, subdivision (f) generally prescribes that an administrative mandamus proceeding be disposed of by denial of the writ or a direction to a named respondent to set aside its decision, that section comes into play in commission matters only by application of Government Code section 11523, which specifies that judicial review may be had "by filing a petition for writ of mandate in accordance with the provisions of the Code of Civil Procedure, *subject, however, to the statutes relating to the particular agency.*" (Italics supplied.) The "statutes relating to the [commission]" include section 44944, subdivision (e), which provides for the allocation of costs if the commission's decision "is finally reversed or vacated" by the reviewing court. The statutes thus recognize the power of a court to directly set aside the order of the commission. As the commission therefore need not be before the court to enable the court to accord complete relief between the employing school district and the employee, it is not an indispensable party within the meaning of Code of Civil Procedure section 389, subdivision (a), and Burman's demurrer was properly overruled.[17]

3. *Award of Attorney Fees*

Finally, Burman contends the trial court erred in awarding her but $1,500 in costs and attorney fees. She requests that we remand the matter to

[17]Moreover, under section 44944, subdivision (c), the decision of the commission becomes "the final decision of the governing board." In effect then, a strict application of the statutes relied on by Burman would require a district to bring an action against itself to set aside its own order. "Statutes are to be given a reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent 'and which, when applied, will result in wise policy rather than mischief or absurdity.' [Citation.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1392 [241 Cal.Rptr. 67, 743 P.2d 1323].) We decline to construe the statutes as Burman urges.

permit her to demonstrate the greater amount of costs and fees actually incurred. The Court of Appeal had no occasion to address this question in view of its decision on the merits. The point is properly before us, and we will do as Burman requests.

■ Section 44944, subdivision (e) specifies that "[i]f the Commission on Professional Competence determines that the employee should not be dismissed or suspended, the governing board shall pay the expenses of the hearing, including . . . reasonable attorney fees incurred by the employee." Although the statute does not expressly provide for the award of fees if judicial review of a commission decision is sought, fees should be awarded to a prevailing employee for any such review proceedings as well (*Russell* v. *Thermalito Union School Dist.* (1981) 115 Cal.App.3d 880, 884 [176 Cal.Rptr. 1]; *Board of Education* v. *Commission on Professional Competence* (*Lujan*) (1980) 102 Cal.App.3d 555, 562-563 [162 Cal.Rptr. 590]), and costs should be awarded under the general provisions of the Code of Civil Procedure. (Code Civ. Proc., § 1032, subd. (b) ["Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."].)

It appears that the trial court in this case may have awarded Burman $1,500 in costs and attorney fees in the mistaken belief that Government Code section 800 precluded it from awarding a greater amount. That section reads, in pertinent part: "In any civil action to . . . review the . . . determination of any administrative proceeding . . . where it is shown that the . . . determination of such proceeding was the result of arbitrary or capricious action . . . the complainant if he prevails in the civil action may collect reasonable attorney's fees, but not to exceed one thousand five hundred dollars. . . ." Because section 44944, subdivision (e) expressly provides for the award of fees in permanent employee dismissal proceedings, however, its provisions, imposing no limitation, should govern. (*Forker* v. *Board of Trustees* (1984) 160 Cal.App.3d 13, 21 [206 Cal.Rptr. 303].)

As we cannot tell whether the trial court based its award on an implicit finding that $1,500 was a reasonable fee or whether it erroneously believed that no more than that sum could be awarded, we conclude that Burman's request for a remand on this point should be granted. On remand, she is entitled to request reasonable fees for all trial and appellate proceedings.[18] (*Ibid.*)

---

[18] In the Court of Appeal, the district contended that no remand on the attorney fee question was warranted because Burman had failed to provide the trial court with any information showing that she incurred a greater amount of fees. Given that section 44944, subdivision (e) specifies no procedure for claiming fees, it would have been appropriate for Burman to file such a memorandum after judgment was entered. (See Code Civ. Proc., § 1033.5, subd. (a)(10); Cal. Rules of Court, rule 870(a)(1).) The trial court, however, made its award of

## CONCLUSION

We recognize that cogent arguments were made on both sides of this case. On the one hand, the statutory scheme contemplates the exercise of discretion by a commission on professional competence and the rendition of judgments on the propriety of dismissing an employee found guilty of misconduct. On the other hand, we have a clear legislative intent to limit the authority of a commission to dispose of dismissal charges by suspension.

On balance, we believe Education Code section 44944 is best read to vest discretion in a commission on professional competence not to dismiss an employee even though a cause for discipline is found to exist. Our interpretation recognizes the discretion initially conferred on an employing school district to determine whether to charge an employee and what charges to pursue, but confirms the commission's role as the professional body charged with determining the appropriateness of a given sanction. We reject Burman's contention that the commission is an indispensable party in proceedings of this nature and remand the attorney fee question to the trial court for further proceedings consistent with this opinion.

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to enter judgment affirming the trial court in part and reversing in part and directing it to enter judgment denying the petition for a writ of mandate and to award Burman reasonable costs and attorney fees in accordance with this opinion.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Spencer (Vaino H.), J.,* concurred.

---

$1,500 in fees without affording Burman the opportunity to file such a memorandum. As the district has not raised any issue before us on the attorney fee question, we need not decide the appropriate procedure, nor need we discuss at this time Burman's avowed intention to seek enhancement of any fee award under a "lodestar" theory. (See *Sternwest Corp.* v. *Ash* (1986) 183 Cal.App.3d 74, 76-77 [227 Cal.Rptr. 804].)

* Presiding Justice, Court of Appeal, Second Appellate District, Division One, assigned by the Chairperson of the Judicial Council.