[No. A041283. First Dist., Div. Two. Aug. 21, 1989.]

JOHN L. LARSON, Plaintiff Appellant, v.
SAMUEL DUCA, as Assessor, etc., et al., Defendants and
Respondents.

## COUNSEL

Haskell Titchell, Edward J. McCaffery and Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel for Plaintiff and Appellant.

Louise H. Renne, City Attorney, and John J. Doherty, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**PETERSON, J.**—This is a case of first impression in which appellant John L. Larson challenges a trial court ruling concerning the application of Proposition 58. That proposition amended article XIII A, section 2, to the California Constitution[1] (section 2) by adding thereto, inter alia, subdivision (h) effective November 5, 1986, and thereby granted property tax relief to persons who acquired California real property from their parents by providing that such a transfer would not, with certain monetary limitations, trigger reassessment as a "change in ownership" of the property for tax purposes. The trial court ruled as a matter of law that Proposition 58 had no application to appellant's inheritance of real property from his mother under her will, because his mother had died one month prior to passage of the proposition, even though it was only after the proposition passed that her estate was probated and the resulting transfer of the subject real property to appellant was completed. ▮ We will hold in reversing the judgment that the "change in ownership" in the real property from the deceased mother to her son, as provided by Proposition 58, did not occur on the date of her death; it resulted from an "order or judicial decree" of distribution of the court in which the mother's estate was probated; that decree of distribution issued after Proposition 58 became effective; and the son is, accordingly, entitled to the proposition's benefits.

---

[1] Article XIII A, section 2 was part of an initiative measure (Prop. 13) added to the Constitution by vote of the people on June 6, 1978. Inter alia, it limited the assessed value of real property for ad valorem tax purposes to that shown on the 1975-1976 tax bill unless a change of ownership occurred after the 1975 assessment.

## I. FACTS AND PROCEDURAL HISTORY

Appellant's mother died on October 2, 1986; and her will left to appellant her residential real property located in San Francisco. On November 4, 1986, Proposition 58 passed.[2] It added subdivisions (g), (h) and (i) to section 2, and essentially provided that specified transfers of real property from parents to children including those "resulting from a court order or judicial decree" would not constitute a change in ownership triggering reassessment for purposes of property taxes. Thereafter, on November 20, 1986, the will of appellant's mother was admitted to probate. On July 6, 1987, the subject real property was ordered distributed to appellant.

Respondent Samuel Duca, the assessor of the respondent City and County of San Francisco (hereafter collectively referred to as respondents), contended that the real property was liable to reassessment because title thereto had been transferred to appellant by operation of law as of the date of his mother's death, which was prior to the effective date of Proposition 58. Appellant filed for declaratory relief and for a writ of mandate in the trial court. On January 13, 1988, the trial court ruled as a matter of law for respondents, although it also opined that "this is close . . . . I am cheerful at the prospect of you[r] taking this up [on appeal]." Appellant timely appealed.

## II. DISCUSSION

The parties have not cited, and our own research has not discovered, any case bearing on the issue of the applicability of Proposition 58. Here we must decide whether it applies to real property which passed by inheritance to the children of decedents who died *before* the passage of the proposition, and whose estates were probated and whose property was distributed *after* the proposition became effective. We conclude that the determinative language as applied to this case is that added by Proposition 58 to subdivision (h) of section 2, which provides as follows: "For purposes of subdivision (a) [governing reassessment], the terms 'purchased' and 'change [in] ownership' shall not include the purchase or transfer of the principal residence of the transferor in the case of a purchase or transfer between parents and their children . . . . This subdivision shall apply to both voluntary transfers and *transfers resulting from a court order or judicial decree*." (Italics added.)

■ "It is blackletter law that the Constitution and statutes must receive practical, common sense construction [citation] and that an interpretation

---

[2] The general election occurred on November 4, 1986. Proposition 58 was a constitutional amendment, which became effective on the day after it was enacted, November 5, 1986. (Cal. Const., art. XVIII, § 4.)

which would lead to an unreasonable result or absurdity must be avoided. [Citations.]" (*Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1181-1182 [224 Cal.Rptr. 285].) ■ "It is, of course, well settled that in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer." (*Id.* at p. 1182; accord *E. Gottschalk & Co., Inc.* v. *County of Merced* (1987) 196 Cal.App.3d 1378, 1382-1383 [242 Cal.Rptr. 526].) ■ In interpreting constitutional measures enacted by the voters, we must also follow the rule that "the electorate would be deemed to know" the state of the law prior to enactment. "The adopting body is presumed to be aware of existing laws and judicial construction thereof [citation] . . . ." (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744].)

We must also consider the "'legislative'" history of Proposition 58, which provides: "This constitutional amendment would broaden the circumstances under which reassessment is not required in cases involving the transfer of real property between parents and children." (Analysis by Legislative Analyst, Ballot Pamp., Proposed Amend. to Cal. Const. with arguments to voters, Taxation [of] Family Transfers, Gen. Elec. (Nov. 4, 1986) p. 24.) ■ "Ballot summaries and arguments are accepted sources from which to ascertain the voters' intent and understanding of initiative measures." (*In re Lance W., supra,* 37 Cal.3d at p. 888, fn. 8.)

■ Appellant argues such precedents and guides indicate that a transfer "resulting from a [probate] court order" only "result[s]" upon the issuance of the order in question, which in the context of his mother's estate is that order distributing the subject real property to appellant issued *after* the effective date of Proposition 58. Respondents argue that this analysis is vitiated because transfer of title occurred by operation of law on the date of the death of appellant's mother, prior to the effective date of Proposition 58; which finding respondents allege is further compelled by a 1988 amendment to Revenue and Taxation Code section 63.1 (section 63.1).

In our analysis we note that Proposition 58 further amended the prior constitutional amendment enacted by the people in 1978 as Proposition 13, and first turn to significant precedent involving the latter measure.

■ Under Proposition 13[3] "a 'change in ownership' does *not* occur, upon the 'transfer of bare legal title' to property, without a corresponding transfer of 'the beneficial use thereof.'" (*Parkmerced Co.* v. *City and County of San Francisco* (1983) 149 Cal.App.3d 1091, 1094 [197 Cal.Rptr. 401], italics in original.) ■ "'In common parlance the term "ownership"

---

[3] California Constitution, article XIII A.

generally connotes *the right of possession and use to the exclusion of others, as distinguished from technical aspects of title.* [Citation.] This basic concept of ownership is consistent with the purposes, goals, and design of article XIIIA, which is primarily a tax relief measure. . . .' [Citation.]" (*E. Gottschalk & Co., Inc.* v. *County of Merced, supra,* 196 Cal.App.3d at p. 1385, italics added.)

■■■ For purposes of article XIII A of the Constitution as now totally enacted by Propositions 13 and 58, it is obvious that appellant received at most " 'bare legal title' " to the real property by reason of his mother's death without acquiring the possessory rights thereto and the beneficial use thereof, which were deferred as to appellant until the property was decreed to him from her estate.

We agree with the "change in ownership" analysis of *E. Gottschalk & Co., Inc., supra,* and of *Parkmerced Co., supra.* It is obvious that, if transfer of bare legal title to property without the right of its possession and use to the exclusion of others was, and is, insufficient to constitute such "change in ownership" under Proposition 13 as originally enacted, the " 'technical' " transfer of property title to a child devisee of a parent, without the same right of possession and use on the date of, and solely by reason of, the parent's death while the estate awaits probate, is equally insufficient to constitute a "change in ownership" under the amendatory provisions of Proposition 58. This is particularly true where the people's purpose in enacting both propositions was to provide tax relief; and where the triggering event of Proposition 58 for change in ownership under the circumstances of this case (in apparent recognition of the limiting statutory conditions attached to the receipt of title to and use of real property because of an intervening probate administration discussed, *post*) was expressly stated by the people to be something other than such demise of the transferring parent, i.e., a transfer of title "resulting from a court order."

Respondents' reliance on pre-Proposition 58 authorities, observing that "the title to [the decedent's] property" passed to heirs under former Probate Code section 300 (now Prob. Code, § 7000) on the date of the decedent's death, is misplaced. Such "title" was and is explicitly made "subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, *sale, or other disposition* . . . ." (Former Prob. Code, § 300, italics added; cf. Prob. Code, §§ 7000-7001.)

■■■ The people, in enacting Proposition 58, are presumed to have known of the provisions of these Probate Code sections so conditioning passing of "title" to a decedent's property on his death to his devisees or intestate heirs on probate administration first occurring; and that during

such administration the property may be sold or disposed of by decedent's personal representative with court approval to pay debts, devises, family allowances, expenses of administration, or taxes so as never to be ultimately available for transfer to a successor.[4] (*In re Lance W., supra,* 37 Cal.3d at p. 890, fn. 11.) With this presumptive knowledge, the people chose the event triggering tax relief to a decedent's successor children to be the transfer of property "resulting from a court order or judicial decree," and not the event of the parent transferor's death.

■ Further authorities relied on by respondents predate Proposition 58, and obviously say nothing about the language of Proposition 58 itself or about whether transfers "resulting from a court order or judicial decree," in the language of the proposition, can somehow predate the order from which they result. For example, in the case on which respondents place most emphasis, *California Academy of Sciences* v. *County of Fresno* (1987) 192 Cal.App.3d 1436 [238 Cal.Rptr. 154], the court simply held that a tax-exempt entity could not be taxed on property during the period when it was being administered by the executors of the will prior to being distributed. This case simply turned on the "unique" tax-exempt status of the California Academy of Sciences, not on analysis of Proposition 58. (*Id.* at p. 1441.) Respondents simply suggest that some species of bare "title," *subject* to administration and ultimate distribution by court order, may pass on the date of a decedent's death. ■ The question here, however, is whether a "change in ownership" contemplated by Proposition 58 occurs on such death when the probate of decedent's estate is necessary to decree title; or whether such "change in ownership" occurs only when the potential obstacles to a child's acquisition of title in probate are eliminated at close of the estate, and "change in ownership" "result[s]" from the court's decree of distribution of the real property to the decedent's child. We believe such "change in ownership" occurs in the latter circumstance, not on the parent's death; and that if the decree which passes title to the child is issued after the effective date of Proposition 58 no reassessment is triggered.

Nor is the preproposition interpretation (as embodied in former Cal. Admin. Code, now Cal. Code of Reg., tit. 18, § 462) of the State Board of Equalization, which reassessed property as of the date of a decedent's death, helpful to respondents because the issue here is not *when* property should be reassessed under prior law, but *whether* certain property transfers "resulting from a court order" should trigger reassessment under current law. ■ "[I]t is well settled that such [administrative] interpretation should be followed only if it is not erroneous [citation]; and that the final responsibili-

---

[4]See generally former Probate Code sections 754, 758, and present Probate Code sections 10000, 10001.

ty for the interpretation of the law rests with the courts, not with the administrative agencies." (*Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda, supra,* 178 Cal.App.3d at p. 1183.)

■ This case moreover does not actually involve the principle upon which respondents rely; i.e., that laws should not be given "retroactive" effect, but should be given effect (if they are constitutional amendments, see Cal. Const., art. XVIII, § 4) as of the day following their enactment. Appellant does not argue for, nor does this case actually involve, any truly "retroactive" effect such as the application of the proposition to property previously reassessed because it had been transferred or distributed to heirs prior to passage of Proposition 58. Rather, appellant argues that, since the proposition by its own terms provides it shall apply to "transfers resulting from a court order" and since the transfer here resulted from a court order which postdated the effective date of the proposition, the transfer itself must be held to have postdated the effective date of the proposition. We agree that logically a court order cannot "result[]" in a transfer of property, under this provision of the Constitution, until the court order for the transfer has issued.

The parties also dispute the meaning and applicability in this case of section 63.1, which was initially passed by the Legislature in 1987 in order to implement Proposition 58 by defining, inter alia, the term "children" as used in the proposition. Appellant points to the fact that the statute provides that Proposition 58 shall apply to "transfers . . . *completed* on or after November 6, 1986. . . ." (§ 63.1, subd. (f).) Appellant reasons that a transfer pursuant to probate cannot be completed until the probate court issues its order. Further, appellant relies on the fact that the statute is to be "liberally construed in order to carry out the intent of Proposition 58 . . . ." (Stats. 1987, ch. 48, § 2, No. 3 West's Cal. Legis. Service, p. 25; No. 2 Deering's Adv. Legis. Service, p. 13.)

Section 63.1, subdivision (f) was amended in 1988 to provide as follows: "This section shall apply to purchases and transfers of real property completed on or after November 6, 1986, *and shall not be effective for any change in ownership, including a change in ownership arising on the date of a decedent's death, which occurred prior to that date.*"[5] (Italics added to indicate language inserted by 1988 amendment.)

---

[5] The first 1988 amendment to section 63.1 left subdivision (f) intact as originally enacted in 1987 (Stats. 1988, ch. 700, § 1, No. 8 West's Cal. Legis. Service, p. 1579; No. 3 Deering's Adv. Legis. Service, p. 2247); the second 1988 amendment added the emphasized language of subdivision (f), *ante*. (Stats. 1988, ch. 769, § 3, No. 9 West's Cal. Legis. Service, p. 1746; No. 3 Deering's Adv. Legis. Service, p. 2452.)

Respondents argue that the new amendment is dispositive and bars appellant's claim, because the amendment enacted after this suit was decided in the trial court embodies a legislative interpretation, binding on this court, of the previously expressed intent of the people in enacting Proposition 58. We disagree. The text of Proposition 58 simply left to the Legislature the task of defining the term "children" as used in the proposition; and the Legislature has properly defined that term broadly to include, inter alia, certain stepchildren and adopted children. (§ 63.1, subd. (c)(2).) However, the statute cannot, on respondents' rationale, be used here as an end run around the explicit language of Proposition 58 which extends tax relief to transfers from parent to child "resulting from a court order." ▉ "[T]he Legislature cannot implement statutes which limit or expand the commonsense meaning of a term which is part of the Constitution as a result of the people's power to legislate by a voter-passed initiative." (*E. Gottschalk & Co., Inc.* v. *County of Merced, supra,* 196 Cal.App.3d at p. 1384.)

Appellant also points out that the quoted language may simply be inapposite, because it may refer only to transfers such as the "transfer" of an interest to a surviving joint tenant at the death of the other joint tenant. Appellant suggests that *those* transfers arise, not as a result of a court order, but without court order on the date of a decedent's death.

We need not decide these statutory issues because we have concluded that the decision here must rest ultimately on the constitutional language of Proposition 58 itself, not the language of such subsequent legislation.[6]

▉ In summary, the prospective acquisition of title to real property by the child of a decedent, under the latter's will admitted to probate, is always subject to the personal representative's sale of that real property during the estate's administration. (Prob. Code, §§ 7000-7001.) The child, while he may acquire bare legal title thereto on his parent's death, subject to probate administration, does not in such circumstances acquire the full right of

---

[6] For the same reasons we find unavailing respondents' argument in their letter brief that Revenue and Taxation Code section 480, subdivision (b) and Probate Code section 8404, subdivision (c) weigh in their favor. Those statutes merely require that the personal representative of an estate file a statement of change in ownership during the probate of the estate. Significantly, neither statute fixes that date of change in ownership as the date of the decedent's death. Moreover, when Revenue and Taxation Code section 480, subdivisions (a) and (b) are read together, they would appear, if anything, to support *appellant's* argument. Section 480, subdivision (a) generally requires that a statement of change in ownership be filed upon "any" change in ownership. If this included by its terms the death of any decedent, it would not have been necessary for section 480, subdivision (b) to specifically provide that every personal representative must also file such a form. Further, even if these statutes supported respondents' argument, we could not use oblique language in statutes to avoid the clear import of the Constitution.

possession and beneficial use of the decedent's real estate, to the exclusion of others, until a transfer of title to him results from the court's decree of distribution in the parent's estate. ■■■ We believe "ownership" of real property, for purposes of section 2 as it exists with the amendment of Proposition 58, continues to mean the right of possession and beneficial use of property as opposed to acquisition only of bare legal title.

However, we emphasize the narrowness of our holding which is simply this: When a decedent dies before November 5, 1986, and his child acquires decedent's real property on probate of that decedent's estate through a decree of distribution in those probate proceedings which is issued after November 5, 1986, Proposition 58 proscribes reassessment of that real property by reason of such transfer and change in ownership. We emphasize also that we do not address or decide any other questions beyond the facts of this case. Respondents postulate a parade of alleged adverse consequences which they claim will result from our ruling, such as its claimed fiscal effect on local governments. We note that our holding here only applies to a relatively narrow class of property transfers, which we believe were explicitly exempted by the constitutional amendment in question; and in any event, that Proposition 58 obviously was passed in specific contemplation of, and indeed mandates, such fiscal effects. Although we do not fault respondents for their diligent defense of their tax revenues, we believe that governments have no legitimate interest in the collection of tax increases which our Constitution forbids governments to collect.

■■■ Respondents have cross-appealed in order to preserve an additional argument that appellant cannot prevail because he had not submitted written certification he is the child of his mother, as now required by section 63.1, subdivision (d).[7] Appellant points out that the statute requiring such a certification did not exist at the relevant time; that respondents did not raise the issue, by way of affirmative defense or otherwise, or request such a certification during the administrative process; and that appellant did what he was required to do at the time to ripen his claim. Appellant also suggests respondents' argument on this point, that appellant's constitutional claim should be barred because he allegedly failed to comply with a statute which did not exist at the time his mother's property allegedly passed to him, and which would require him to file a form saying that he is the child of his mother (a fact presumably established in the probate of her estate), carries bureaucratic procedure to a ridiculous excess. We agree.

---

[7] Respondents' precise contention appears to be moot, because their counsel has since informed the court by letter brief that the required certification has now been filed, although its timeliness is still disputed.

## III.  DISPOSITION

The judgment is reversed, and the case is remanded to the trial court for the entry of an order granting appellant the relief requested.

Kline, P. J., and McCarty, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied November 16, 1989.

---

* Assigned by the Chairperson of the Judicial Council.