[No. A053816. First Dist., Div. Two. Jan. 26, 1993.]

DEREK PAOLI, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF MENDOCINO COUNTY,
Defendant;
COUNTY OF MENDOCINO, Real Party in Interest and Respondent;
MENDOCINO COUNTY EMPLOYEES' ASSOCIATION, Intervener and
Appellant.

## Counsel

William L. Williams, Jr., for Plaintiff and Appellant.

H. Peter Klein, County Counsel, and Jeanine B. Bauman, Deputy County Counsel, for Real Party in Interest and Respondent.

Pano Stephens for Intervener and Appellant.

## Opinion

**KLINE, P. J.**—Derek Paoli and the Mendocino County Employees' Association appeal from the denial of a petition for writ of mandate seeking to set aside the Mendocino County Civil Service Commission's order terminating Paoli's employment. They contend the commission exceeded its authority by ordering termination on an appeal from an administrative order of suspension.

### Statement of the Case and Facts

On January 7, 1990, cross-appellant Derek Paoli was employed as a Corrections Deputy II in the Mendocino County Sheriff's Office. At approximately 1:30 a.m., while on duty, Paoli assisted in a practical joke involving the discharge of a firecracker inside an office at the county jail. In so doing, Paoli left his post and allowed two doors to remain unsecured. In the ensuing investigation of the incident, Paoli initially made false statements about his participation which he subsequently corrected.

Paoli received written notice of the undersheriff's proposal to suspend him without pay for 30 days as a result of his participation in the firecracker incident and dishonesty during the investigation. He exercised his right to respond to the proposed disciplinary action (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]) and an informal administrative hearing was held on March 14. After this hearing, the sheriff decided not to modify the proposed disciplinary action and ordered Paoli to serve the 30-day suspension. Two other employees who participated in the practical joke were terminated from their positions. All three employees appealed to the civil service commission and the appeals were consolidated. By order dated July 18, 1990, the Commission modified cross-appellant's suspension to termination.

On January 25, 1991, cross-appellant filed a petition for writ of mandate seeking to overturn the commission's decision. On March 15, appellant

Mendocino County Employees' Association (Association) applied for and was granted leave to intervene. After a hearing on March 29, the trial court issued a statement of decision denying the petition. Judgment was entered on May 14 and timely notices of appeal and cross-appeal were filed.

## DISCUSSION

Under the Mendocino County Civil Service Ordinance (all undesignated section references are to this ordinance), any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation by the "appointing authority" upon written notice. (§ 3.16.130.) In the present case, the "appointing authority" is the sheriff. (§ 3.16.110.) The appointing authority's disciplinary order is final unless the employee files a reply and requests an appeal to the civil service commission. (§ 3.16.130.)[1] If the employee requests an appeal, the sommission or its referee must hold a hearing and "either affirm, modify or revoke" the disciplinary order. (§ 3.16.140.)[2]

The question presented by this case is whether the commission's authority under section 3.16.140 of the county ordinance to "modify" the order of discipline imposed by the appointing authority includes authority to change an order of suspension to one of termination. The trial court held that it does, viewing the commission as having authority to modify discipline "either up or down within a class or from class to class." This decision was based on *Andersen* v. *Civil Service Com.* (1981) 122 Cal.App.3d 577 [176 Cal.Rptr. 66], which held that the Charter of the County of San Diego, permitting the commission to "modify" the order of the appointing authority, authorized the commission to increase as well as decrease the penalty

---

[1]Section 3.16.130 of the Mendocino County Civil Service Ordinance provides: "Any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation by the appointing authority of the County after employment or promotion is complete by a written order, executed by such appointing authority, stating specifically the reasons for this action. The order shall be filed with the Director of Personnel and a copy thereof shall be furnished to the person affected thereby. Such dismissal, suspension or reduction in rank or compensation shall be final unless such officer or employee files a reply in writing to such order with the Personnel Director and requests an appeal to the Civil Service Commission within ten (10) days after the receipt of the original order; appointing power in a dismissal, demotion, or suspension may make the action effective immediately."

[2]Section 3.16.140 provides in full: "If the employee affected by the order referred to in Section 3.16.130 hereof files a reply and request for appeal to the Civil Service Commission within the specified time, the Director of Personnel shall forthwith transmit the order, reply and request for appeal to the Civil Service Commission for hearing. Within twenty (20) days from the filing of such appeal, the Commission or its referee shall hold a hearing which may be continued from time to time, and at the conclusion thereof either affirm, modify or revoke the order. The appellant may appear personally, produce evidence, be represented by counsel, and have a public hearing if it is desired. If the Commission appoints a referee, a complete transcript shall be made and presented to the Commission."

imposed. In *Andersen,* various employees appealed to the civil service commission after being suspended for participating in a job action. The commission determined that an appropriate penalty would be eight hours' suspension for each day of participation in the job action. This formula resulted in reduction of the penalty imposed by the appointing authority in most cases, but in increased penalties for four employees, from 24 to 40 hours in 2 cases and from 16 to 24 and 24 to 32 hours in the others. The court rejected the suggestion that the charter's authorization to "affirm, modify or revoke" permitted only a decrease in penalty, noting that the term "modify" can include changes in either direction and that the charter's provision for modification of the discipline "provided ample notice to the employees and their counsel that an appeal might result in a change in discipline which they would not like, whether by direct increase or other alteration." (122 Cal.App.3d at p. 580.)

■ *Andersen* defined "modify" as meaning " 'to alter; *to change an incidental or subordinate feature*; enlarge, extend; limit, reduce.' " (*Andersen v. Civil Service Com., supra,* 122 Cal.App.3d at p. 579, quoting Black's Law Dict. (rev. 4th ed. 1968) p. 1155 [italics added].) "Modification" is defined as " '[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, *but leaves the general purpose and effect of the subject-matter intact.*' " (*Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 760 [256 Cal.Rptr. 590], quoting Black's Law Dict. (5th ed. 1979) p. 905 [italics added in *Fallbrook*]; see *Police Protective Ass'n of Casper* v. *City of Casper* (Wyo. 1978) 575 P.2d 1146, 1149 [provision for contract to continue until altered or modified did not contemplate termination of contract].) The commission's action in *Andersen* clearly constituted a modification under these definitions, as it increased the duration of the employees' suspensions but did not alter the nature of the penalty imposed by the appointing authority.

■ The present case differs in that the commission here did not simply increase the duration of Paoli's suspension but imposed the entirely different penalty of termination. Termination is the most extreme penalty that can be imposed in the employment context, depriving the employee of the means of livelihood and making it more difficult to find other employment because of the questionable circumstances under which the prior job ended. (See *Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 543 [84 L.Ed.2d 494, 504-505, 105 S.Ct. 1487].) By contrast, a suspension does not destroy but merely interrupts employment. (*Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 562 [150 Cal.Rptr. 129, 586 P.2d 162].) The change from an order imposing a 30-day suspension to an order terminating employment does not simply change an incidental detail but

alters the fundamental nature and effect of the originally imposed punishment. Neither *Andersen* nor recognized definitions allow a change of this kind to be viewed as a "modification."

Indeed, to view the commission's authority to "modify" disciplinary orders as allowing it to change an order of suspension to one of termination would violate employees' rights to due process. Due process requires that before punitive action is taken an employee must be given notice of the proposed disciplinary action and an opportunity to respond. (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d 194, 215; *Cleveland Board of Education* v. *Loudermill*, *supra*, 470 U.S. at p. 546 [84 L.Ed.2d at p. 506].) In the present case, Paoli was given notice of and an opportunity to respond to the proposed 30-day suspension; he was never informed that he faced outright termination of his employment. ██ ██ ██ While the ordinance authorizing the commission to "modify" a disciplinary order may be viewed as providing notice that an initial order might be altered in a manner unfavorable to the employee (*Andersen*, *supra*, 122 Cal.App.3d at p. 580), it cannot be seen as giving the employee notice that a manner of punishment totally different from that imposed by the appointing authority might be imposed after an appeal to the commission.[3] Accordingly, the commission exceeded its authority under the Mendocino County Civil Service Ordinance by changing the appointing authority's order of suspension to an order of termination.[4]

The judgment is reversed and the matter remanded to the trial court for further proceedings in accordance with the views expressed herein. Appellant shall recover his costs on appeal.

Smith, J., concurred.

---

[3]Respondent urges that a definition of "modify" which precludes changing the character or general purpose and effect of the original disciplinary order would deprive the commission of authority to rescind an order of termination. Section 3.16.140, however, specifically gives the commission such authority by authorizing it to "affirm, modify or revoke" the order. If the term "modify" encompassed rescission of a termination order, it would be unnecessary for the ordinance to also give the commission authority to "revoke" a disciplinary order, and inclusion of the latter term would serve no purpose. Under established principles of statutory construction, " ' "significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose" ' " and " ' "a construction making some words surplusage is to be avoided." ' " (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689], quoting *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155].) Similarly, section 3.16.150 directs that if a disciplinary order is "reversed or modified" by the commission, the employee must be restored to his previous position with all rights and privileges pertaining thereto except as the decision may affect employment status. Use of both terms in this section of the ordinance indicates it is not necessary to resort to the term "modify" to find authority for reversal of an order of termination.

[4]In view of this conclusion, we need not reach cross-appellant's additional argument that he was denied his right to representation during the investigation of the firecracker incident.

**PETERSON, J.***—I respectfully dissent. The majority incorrectly concludes that, when an administrative personnel matter is heard de novo before a county civil service commission, a *new* trier of fact hearing live testimony under oath, the commission's broad statutory power to "modify" the penalty imposed upon the employee means only that it (1) may impose punishment *more* rigorous if the increased punishment is of the same "nature" previously imposed (maj. opn., *ante*, p. 1078), and (2) may make the punishment *less* rigorous regardless of the degree of reduction. In sum, the majority appears to conclude that the word "modify" means the commission has the power to increase the administrative punishment by a little but not too much, but may decrease the penalty by a little or a lot. None of this exegesis is in the statute the majority is attempting to modify.

The majority reaches this conclusion even though the prior administrative decision, simply based upon certain documents and materials rather than live testimony, lacked the benefit and consideration of all the evidence later presented to the commission, including the very damning testimony of the party demanding the hearing. So, under the majority's logic, the trier of fact which heard the evidence cannot base its decision on that evidence.

The majority's strange result—contrary to *Andersen* v. *Civil Service Com.* (1981) 122 Cal.App.3d 577 [176 Cal.Rptr. 66], the only reported case on point—is concocted as follows. First, the majority selectively chooses as applicable to this case *one* of several alternate dictionary definitions, gleaned from Black's Law Dictionary ((rev. 4th ed. 1968) p. 1155, col. 2), of the word "modify," i.e., "to change in incidental or subordinate features." Having parsed this one phrase from that definition (while ignoring "[t]o alter," "enlarge," and "extend" as definitions of "modify") (*Andersen* v. *Civil Service Com.*, *supra*, 122 Cal.App.3d at p. 579), the majority then turns to language defining "modification," taken from a later edition of Black's Law Dictionary ((5th ed. 1979) p. 905, col. 2) and quoted with italics in *Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 760 [256 Cal.Rptr. 590], as " 'an alteration or amendment which introduces new elements into the details, or cancels some of them, *but leaves the general purpose and effect of the subject-matter intact.*' "

On these weak pegs, the majority hangs its weighty conclusion that, once a form of punishment (such as temporary employment suspension) is proposed by the employing agency, a county civil service commission may only "modify" an employee's punishment *upward* by increasing the length of that administrative suspension. Such an increase, the majority contends, "did not

---

*Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.

*alter the nature of the penalty imposed by the appointing authority.*" (maj., opn., *ante*, at p. 1077, italics added.) The erroneous premises here are (1) that the "subject-matter" is the *form* of punishment administratively imposed (suspension), and (2) that the *Andersen* court reached a result consistent with the majority by increasing the length of suspension, thereby confining its modification to the "general purpose and effect" of that subject matter. Not surprisingly, *Andersen* engages in no such tortured analysis of the meaning of "modify."

In attempting to rationalize its result with the holding in *Andersen*, the majority effectively concedes, as I believe it properly must, that a county civil service commission reviewing de novo an appointing authority's personnel action may, in fact, modify the penalty by increasing, as well as reducing, the punishment administratively imposed. I believe this concession is fully warranted by the plain language of the governing statute, Government Code section 31108, subdivision (3), and applicable authority.

I must part company with the majority when it claims that, while the commission has the power to enlarge or extend such punishment on de novo hearing, this power is limited (by the majority's wholly selective interpretation of the word "modify") to increasing the *specific type* of punishment theretofore imposed by the appointing authority. No case heretofore decided has reached this strange result, which is wholly inconsistent with the existing case law.

*Andersen, supra,* found that the power to modify *includes* the power " 'to alter[,] . . . enlarge, extend . . . .' " (122 Cal.App.3d at p. 579.) *Fallbrook, supra,* also recognized that an "amendment," which the court, inter alia, found to be a synonym for "[m]odification," is "a change made by correction, addition, or deletion." (208 Cal.App.3d at p. 760, italics added by the *Fallbrook* court.)

The majority tries to buttress its selective definition of "modify" with *Fallbrook*'s further alternative discussion of the meaning of modification as effecting " 'A change[,] an alteration or amendment which . . . *leaves the general purpose and effect of the subject-matter intact.*' " (208 Cal.App.3d at p. 760, italics added by the *Fallbrook* court.) However, the majority simply ignores *Andersen*'s and *Fallbrook*'s proper recognition that modification means the power *to alter, enlarge, and extend.* The "subject-matter" the commission addresses in a de novo hearing, in my view, is much broader than that the majority espouses. It encompasses a complete and new consideration and review of both the employee's actions which resulted in punitive action, and the *whole* range of penalty this action merits, based on the evidence adduced in such hearing.

Both the relevant statutes and all the relevant case law hold that a county commission can modify such a penalty, either by increasing or decreasing it. No court has ever espoused the majority's requirement that such modification is limited only to increasing slightly or decreasing substantially the administrative punishment previously imposed.

The Mendocino County ordinance in issue here, which allows the county commission to "modify" the discipline imposed for misconduct, is not some unusual local relic. Every county civil service commission in the state is required to operate under the same type of ordinance, the specific terms of which are mandated by state law. (Gov. Code, § 31108.) "Within 20 days from the filing of the [employee's] appeal the commission shall commence a hearing, and either affirm, *modify*, or revoke the order." (*Id.* at subd. (3), italics added.)

All available authority interprets this language as allowing the local commission to modify the penalty imposed, either by increasing it or decreasing it without express limitation. (*Andersen* v. *Civil Service Com.*, *supra*, 122 Cal.App.3d at pp. 579-580.) "Employees contend the commission, by increasing the penalties imposed on appeal from the suspensions . . . , exceeded its jurisdiction . . . . The crux of all these contentions is employees' argument that the provision of [the local ordinance] which authorized the commission to 'affirm, modify, or revoke' the discipline imposed . . . , permitted a decrease, but not an increase, in the employees' suspension." (*Id.* at p. 579.) " 'Modify' means 'to alter; to change an incidental or subordinate feature; enlarge, extend; limit, reduce.' [Citation.] California usage is in accord. [Citations.] . . . The commission did not exceed its jurisdiction." (*Ibid.*)

Subsequent case law agrees that the power to "modify" means the power to change or "amend[]," by increasing or decreasing the content. (See, e.g., *Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.*, *supra*, 208 Cal.App.3d at p. 760 [citing *Andersen*, *supra*, and holding that the power to effect "[m]odification" is the power to cause " 'A change[,] an alteration or amendment which introduces new elements into the details, or cancels some of them . . . .' "]; accord, *Huening* v. *Eu* (1991) 231 Cal.App.3d 766, 776-777 [282 Cal.Rptr. 644].)

Significantly, the California case law at the time the Legislature formulated the "affirm, modify, or revoke" provision in 1943 (Stats. 1943, ch. 1044, § 1, pp. 2979-2980) specifically interpreted the word "modify" as allowing a modification which increased the punishment previously imposed. (*In re Marcus* (1936) 11 Cal.App.2d 359, 360-361 [53 P.2d 1021].)

"The only point raised is that the modified order . . . was in excess of the court's jurisdiction . . . because the court was without power to change the length of the jail term [by increasing it from 60 days to 1 year]." (*Id.* at p. 360.) "Section 1203 of the Penal Code, upon which the power of the court in such a matter is based, includes the following: 'The court shall have power at any time during the term of probation to revoke or modify its order of suspension of imposition or execution of sentence.' " (*Ibid.*) "It follows that the court did not exceed its jurisdiction in modifying its order by enlarging this particular condition [to 1 year in jail]." (*Id.* at p. 361.)

Of course, the Legislature's "modify" language should be interpreted according to the case law then in existence. As we said in *Larson* v. *Duca* (1989) 213 Cal.App.3d 324, 329 [261 Cal.Rptr. 559], " 'The adopting body is presumed to be aware of existing laws and judicial construction thereof . . . .' " (Quoting *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [694 P.2d 744].) "It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions . . . ." (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12], fn. omitted; accord, *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) The 1943 Legislature chose the judicially construed word "modify" not the word "reduce," and omitted any confinement of that power to reduction or increase of the type of punishment theretofore imposed when referring to a commission's power to review it.

The majority suggests a further rationale of its holding by a perverse misreading of the due process clause. The due process clause, of course, *requires* a true evidentiary hearing, of the type appellant received before the civil service commission, not simply an administrative determination, when the due process rights of a public employee are implicated by employer-imposed discipline. (See *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 573 [33 L.Ed.2d 548, 558-559, 92 S.Ct. 2701]; accord, *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774].) That is exactly what appellant received. Nevertheless, the majority tells us that the due process rights of a jail guard—who helped explode a firecracker in the jail he was supposed to be guarding—were violated when he got the de novo hearing he asked for, because that de novo hearing reached a result more adverse to him than the administrative determination—while the majority concedes one type of result of greater adversity to appellant (a longer suspension period) would *not* have denied him due process.

The de novo evidentiary hearing and the commission's order of termination violated no one's due process rights. At the de novo hearing, in contrast

to the prior administrative review, witnesses including appellant testified; the trier of fact received a fuller and more accurate picture of the actual facts than had the administrator who decided only suspension was necessary. The evidence showed, contrary to the account of the events that had been related thirdhand to the administrative decisionmaker, that appellant jail guard thought it was perfectly all right to help blow up a firecracker in the jail, so long as he personally did not light the fuse. By parity of reasoning, of course, appellant could rationalize his conduct in holding a prisoner while another guard beat the prisoner to death, if appellant never personally landed a blow. The commission which heard this evidence obviously and properly believed that jail guards, regardless of their propensities for comedy, are supposed to safeguard, not undermine, the security of the county jail.[1]

Finally, appellant was not denied due process because, he claims, he was never advised of the proposed punishment the commission imposed. As the *Andersen* court observed, "The provision [of the San Diego County Charter[2]] for modification of the discipline provided ample notice to the employees and their counsel that an appeal might result in a change in discipline which they would not like, whether by direct increase or *other alteration*. They were entitled to no further notice of that prospect. Due process was not denied." (122 Cal.App.3d at p. 580, italics added.)

The ominous practical effect of the majority opinion is to preclude a county civil service commission from applying its independent judgment as to the penalty to be imposed for employee misconduct, *regardless of the evidence it hears* when the employee seeks a new hearing before it. That judgment of the commission would be limited to the type of punishment already administratively imposed, even if the evidence presented the commission, in the de novo hearing in which the employee participates, shows the misconduct was much more serious in form or detail, by exposing wrongful motivation or amorality which would clearly justify more onerous punishment of a different type.

---

[1] The majority expresses the true but misplaced concern that "Termination is the most extreme penalty that can be imposed in the employment context, depriving the employee of the means of livelihood and making it more difficult to find other employment because of the questionable circumstances under which the prior job ended." (Maj. opn., *ante*, at p. 1077.) The record reflects that, in the course of his misconduct, appellant left his post, allowed two doors to remain unsecured, and lied about his participation in the firecracker incident on initial questioning. The commission did not abuse its discretion by ruling that such conduct and misrepresentation demonstrated appellant's unfitness to safeguard the public interest by further performance of the important duties of a deputy sheriff, or by ordering termination of his employment.

[2] "[S]ection 916.1 of the Charter of the County of San Diego . . . permits the commission to 'modify' the order of the appointing authority." (*Andersen* v. *Civil Service Com.*, *supra*, 122 Cal.App.3d at p. 579.)

No case, until this one, holds either that an employee has the outer limits of his administrative punishment locked in by the decision he requires the civil service commission to review, or that the commission is only a medium for affirming, *reducing*, or slightly increasing the administrative punishment of an employee, of the same type imposed by the appointing authority.[3]

The majority's result is inconsistent with the plain meaning of the statute and disregards both the contemporaneous judicial interpretation of the word "modify," which was known to the Legislature when enacting Government Code section 31108, and the case law interpreting this very provision since its enactment.[4] The Mendocino County Civil Service Commission acted within its authority, and did not abuse its discretion in ordering appellant's employment terminated.

I would affirm the judgment which denied appellant's petition for writ of mandate.

---

[3]Appellate courts, for example, frequently exercise their power to "modify" the civil judgments imposed by lower courts, where interests similar to the property interest in employment are at stake. Code of Civil Procedure section 43 gives us the power to "affirm, reverse, or *modify* any judgment. . . ." (Italics added.) This power to "modify" includes the power to impose a judgment of a different type. (See, e.g., *Spencer Kennelly, Ltd.* v. *Bk. of Amer.* (1942) 19 Cal.2d 586, 589, 594 [122 P.2d 552] [A decree granting only specific performance should be modified on appeal to include an award of compensatory damages against defendant.].) Have we been violating due process all these years when we "modify" judgments? I do not think so, but the majority opinion would seem to support that absurd result.

[4]The majority seeks to buttress its conclusion by fastening upon the word "revoke" in the statute allowing a civil service commission to "affirm, modify, or revoke" the administrative order. (Gov. Code, § 31108, subd. (3).) Unfortunately, this effort fails, only sinking the lead opinion deeper into a quagmire of quibbling. According to the majority, the civil service commission cannot modify a termination to a suspension, or a suspension to a letter of reprimand, since this would change the "nature" of the penalty. Instead, the commission would have to "revoke" the termination and leave the employee totally unpunished. (Maj. opn., *ante*, at p. 1078, fn. 3.) While the word "revoke" was included in the statute to clarify that the commission may totally vacate the administrative decision, this does not mean the commission *must* do so; the commission must logically retain the further power to modify, or change, the order. (See Pen. Code, § 190.4, subd. (e) [requiring that the trial court rule on a motion for "modification" of a death sentence to imprisonment, a change in the nature of the penalty; the trial court need not "revoke" the sentence and leave the offender totally unpunished].)