[No. G014182. Fourth Dist., Div. Three. June 29, 1994.]

THOMAS M. ZAPARA, Plaintiff and Appellant, v.
COUNTY OF ORANGE, Defendant and Respondent.

## COUNSEL

Voss, Cook & Thel, Bruce V. Cook, William A. Goddard and Robert Yonowitz for Plaintiff and Appellant.

Terry C. Andrus, County Counsel, and Thomas C. Agin, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**WALLIN, J.**—Thomas Zapara appeals a judgment against him in favor of the County of Orange in his action for refund of property taxes. The sole issue raised on appeal is whether the transfer of title to real property by a partnership to a general partner, who by virtue of having purchased all minority partnership interests has become the sole partner and sole owner of the partnership and its property, constitutes a "change of ownership" under Revenue and Taxation Code section 60[1] permitting a reassessment of the property for property tax purposes. We affirm.

Zapara, Thomas Gray and Richard Kalferd formed a general partnership in 1969 and held interests in the partnership of approximately 68 percent, 17 percent and 15 percent respectively. The partnership's sole asset was a parcel of real property located in Irvine.

In June 1986 Zapara used his own funds to purchase Gray's and Kalferd's minority interests. An amended statement of partnership was recorded on July 14 acknowledging the transfer, stating the partnership *was not* dissolved but continued with Zapara as its sole partner, and stating Zapara had the sole authority to convey title to the partnership's real property.

On September 2, 1986, the partnership, through Zapara, transferred title to the property to Zapara. The Orange County Assessor reassessed the property at $4.6 million and on October 19, 1987, issued a notice of supplemental assessment. Zapara's application for a change in assessment was denied by the assessment appeals board. His claim for a refund of supplemental taxes, which he paid, was denied by the board of supervisors. He filed the instant action for refund of property taxes and declaratory relief. The trial court entered judgment in the county's favor finding there had been a 100 percent change of ownership.

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

California Constitution, article XIII A,[2] section 1 limits the maximum ad valorem tax on real property to 1 percent of the property's full cash value. The full cash value is the property's value on the 1975-1976 tax bill, but the property may be reassessed upon a "change of ownership." (Cal. Const., art. XIII A, § 2.)

Section 60 defines a change in ownership as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Section 61 provides "[e]xcept as otherwise provided in Section 62, change in ownership, as defined in Section 60, includes . . . (i) [t]he transfer of any interest in real property between [a partnership and a partner]." Section 62, subdivision (a)(2) excludes from a change in ownership a transfer between a partnership and its partners "which results solely in a change in the method of holding title to the real property and in which the proportional ownership interests of the transferors and transferees . . . in [the] real property transferred remain the same after the transfer." Section 64 provides the purchase of an interest in a partnership does not constitute a change in ownership of the partnership's real property provided the acquisition does not represent more than 50 percent of the total interest of the partnership. (§ 64, subds. (a) & (d).)

Based on the foregoing statutes, Zapara makes a relatively simple argument. When he purchased the 32 percent total interests of Gray and Kalferd, he was not acquiring more than 50 percent of the partnership. Therefore, there was no change of ownership of the real property at that time, even though he became owner of 100 percent of the partnership's interests. (§ 64, subd. (d).) When he subsequently transferred the real property to himself, it was no more than a simple change in the method of holding title in which his proportional interest, 100 percent, remained the same. Therefore, the transfer falls within the exclusion of section 62, subdivision (a)(2).

The trial court rejected Zapara's argument and applied the "step transaction doctrine," which, looking to the substance of the transaction rather than its form, combines a series of transactions into one for tax purposes. (*Shuwa Investments Corp.* v. *County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1650 [2 Cal.Rptr.2d 783]. See also *Crow Winthrop Operating Partnership* v. *County of Orange* (1992) 10 Cal.App.4th 1848, 1856-1857 [13 Cal.Rptr.2d 696].) The court concluded the substance of the transaction was a purchase by Zapara of the real property from the partnership. Had he purchased it outright, there would have been a change in ownership triggering reassessment. Instead Zapara bought out the partnership interests and then conveyed

---

[2]California Constitution, article XIII A is commonly known as "Proposition 13," its ballot designation when passed as an initiative constitutional amendment in 1978.

the property to himself. To hold this was not a change in ownership would elevate form over substance. Zapara contends the trial court erred in applying the step transaction doctrine and that under the relevant statutes there was no change of ownership.

■ Whether the transactions constituted a change in ownership is a question of law and we are not bound by the trial court's conclusions. (*Shuwa Investments Corp.* v. *County of Los Angeles, supra*, 1 Cal.App.4th at p. 1644.) Furthermore, if the trial court's ruling is correct on any theory of law it will be sustained "regardless of the considerations that moved the lower court to its conclusion." (*Belair* v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].) We conclude the transactions effected a change in ownership and the statutory exceptions upon which Zapara relies are inapplicable. It is, therefore, unnecessary to consider whether the step transaction doctrine was correctly applied in this case.

■ Section 60 sets forth a three-pronged test for a change in ownership. There must be " '[1] a transfer of a present interest in real property, [2] including the beneficial use thereof, [3] the value of which is substantially equal to the value of the fee interest.' " (*Pacific Southwest Realty Co.* v. *County of Los Angeles* (1991) 1 Cal.4th 155, 162 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) The transfer of the property to Zapara meets all three requirements. He acquired the full fee interest in the property as a result of the two separate transactions.

Zapara contends each transaction, his purchase of the minority interests in the partnership and the subsequent conveyance of the property from the partnership to himself, was separate. He could not have acquired the property without going through each separate step and each step was subject to an exemption from the change in ownership rule.

We consider first Zapara's purchase of the minority interests in the partnership and whether it was exempt from the change in ownership rule. Section 64 provides the acquisition of an interest in a partnership does not constitute a change in ownership of the partnership's property provided the acquisition does not represent more than 50 percent of the partnership interest.[3] Zapara maintains that as he already owned the majority interest in the partnership when he bought out Gray and Kalferd, the section 64

[3]Section 64 provides in pertinent part, "(a) Except as provided in subdivision (h) of Section 61 and subdivisions (c) and (d) of this section, the purchase or transfer of ownership interests in legal entities, such as . . . partnership interests, shall not be deemed to constitute a transfer of the real property of the legal entity. . . . (c) When [any person] obtains a majority

exemption applies to the first transaction. However, nothing in section 64 indicates it applies to a situation such as this where the acquisition of the partnership interest results in dissolution of the partnership.

The change of ownership exemptions applicable to legal entities contemplate transfers involving *continuing* entities, not terminating entities. The State Board of Equalization (SBE) regulations addressing change of ownership support this conclusion. California Code of Regulations, title 18, section 462.180, subdivision (e) provides in pertinent part, "(1) . . . Except as provided in (b)(2) [proportional transfers resulting solely in a change in the method of holding title], the transfer of any interest in real property by a partnership to a partner or any other person or entity constitutes a change in ownership. [¶] (2) Except as provided in (d)(1)(C) and (d)(2) [acquisition of controlling interest], the addition or deletion of partners *in a continuing partnership* does not constitute a change in ownership of partnership property." (Italics added.)

When Zapara bought out his partners, the partnership dissolved. (*Davidson* v. *Tilden* (1978) 86 Cal.App.3d 283, 287 [150 Cal.Rptr. 194]; *Wood* v. *Waterman* (1929) 102 Cal.App. 516, 520 [283 P. 143]. See also Corp. Code, § 15029.) "A partnership is an association of *two or more persons* to carry on as co-owners a business for profit." (Corp. Code, § 15006, subd. (1).) There cannot be a partnership of one. When Zapara became the only "partner," the partnership was dissolved. The subsequent deed of the partnership property to himself in the second transaction was a mere formality. Zapara's reliance on the proportional transfer exemption, section 62, subdivision (a)(2), is misplaced because he became the sole owner of the property when he bought out his partners. This was a change of ownership.

Zapara contends the partnership continued to exist as a partnership of one because he had the right to wind up its affairs. (Corp. Code, § 15030.) He is correct that a partnership is not terminated until winding up is complete. But here the only business of the partnership was ownership of the property and the indefinite continuation of the partnership which Zapara advocates is contrary to the concept of winding up. (*King* v. *Stoddard* (1972) 28 Cal.App.3d 708, 712 [104 Cal.Rptr. 903].) The change of ownership exemption in section 64 contemplates transfer of partnership interests in a continuing partnership, not one that has dissolved. Any other conclusion "would

---

ownership interest in any partnership . . . through the purchase or transfer of . . . partnership interest . . . such purchase or transfer . . . shall be a change of ownership of property owned by the [partnership.] . . . (d) . . . Whenever shares or other ownership interests representing cumulatively more than 50 percent of the total interests in the entity are transferred by any of the original coowners in one or more transactions, a change in ownership of that real property by the legal entity shall have occurred. . . ."

subvert the intent of the people in passing Proposition 13 and the intent of the Legislature in enacting the provisions implementing article XIII A of the California Constitution." (*Shuwa Investments Corp.* v. *County of Los Angeles, supra,* 1 Cal.App.4th at p. 1657.) ██ ██ Zapara's interpretation of the statutes would allow partnerships and other legal entities to escape reassessment of property forever by simply transferring only partial interests in several transactions. (*Ibid.*)[4] We conclude that Zapara's purchase of the minority interests, effectively dissolving the partnership, was a change of ownership requiring a reassessment of the property.

 As an alternative position, Zapara contends that if this transfer did result in a change of ownership, we should hold the change was only partial because he already owned 68 percent of the partnership before the transactions. Section 65.1, subdivision (a) provides that when an interest in only a portion of real property changes ownership, only the portion transferred is subject to reassessment. Section 65.1 is inapplicable, however, because this was not a conveyance of an interest in a portion of the real property, but a conveyance by the partnership of the *entire* property to Zapara. Zapara contends the conveyance was proportional to his interest in the partnership and exempt under section 62, subdivision (a)(2), but as we have explained it was not. *Any* variation in the proportionality of the conveyance by a legal entity to its members will result in a 100 percent reassessment.[5]

---

[4]Zapara has provided this court with two advisory opinion letters by the SBE legal staff. The first, dated October 8, 1991, was rendered in an unrelated case involving similar facts. The SBE staff attorney concluded a majority partner's acquisition of all remaining minority interests did not result in a change of ownership. While the appeal in this case was pending, counsel for Zapara requested a second advisory opinion, based on the facts before us now. That letter, issued August 2, 1993, concludes there was no change of ownership, for the very reasons we have rejected in this opinion. Zapara argues we must give great deference to the advisory opinion letter because it is an interpretation of the statutes by the administrative agency charged with their enforcement. (See *Kern* v. *County of Imperial* (1990) 226 Cal.App.3d 391, 398 [276 Cal.Rptr. 524].) Indeed, he states we are not to depart from the opinion letter's interpretation of the statutes "unless it is clearly erroneous or unauthorized." (*City of Los Angeles* v. *Rancho Homes, Inc.* (1953) 40 Cal.2d 764, 771 [256 P.2d 305].) We disagree. A staff letter is not the equivalent of an administrative agency's contemporaneous interpretation and application of the law. The regulations promulgated by an agency to implement the statutes are, however. The cases upon which Zapara relies all address the weight a court should give to an administrative regulation or to the agency's application of its regulations, not an individual staff member's advisory legal opinion. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593]; *City of Los Angeles* v. *Rancho Homes, Inc., supra,* 40 Cal.2d at p. 771.) The letter is no more than a staff attorney's interpretation of the law. It states it is only advisory, and not binding upon the assessor. We have considered the letter and find it unpersuasive.

[5]The SBE's regulations on this issue give instructive examples: "(A) A transfer of real property from A and B, as equal co-tenants, to Corporation X where A and B each take back 50 percent of the stock. No change in ownership. [¶] (B) Same as (A) above, except A and B

The judgment is affirmed.

Sills, P. J., and Sonenshine, J., concurred.

---

take back 49 percent of the stock and C receives 2 percent of the stock. Change in ownership of the entire property. [¶] (C) A tranfers Whiteacre to Corporation X and B transfers Blackacre (equal in value to Whiteacre) to Corporation X. A and B each take back 50 percent of the stock. Change in ownership of 100 percent of both Whiteacre and Blackacre. [¶] (D) Corporation X owns Blackacre and Whiteacre (both are of equal value). A and B each own 50 percent of Corporations X's shares. X transfers Whiteacre to A and Blackacre to B. Change in ownership of 100 percent of both Whiteacre and Blackacre." (Cal. Code Regs., tit. 18, § 462.180, subd. (b)(2).)