[No. B088264. Second Dist., Div. Six. Aug. 31, 1995.]

JOYCE E. PENNER, Plaintiff and Appellant, v.
COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

## COUNSEL

Philip J. Longo and Alison M. Adams for Plaintiff and Appellant.

Stephen Shane Stark, County Counsel, and Kevin E. Ready, Sr., Deputy County Counsel, for Defendants and Respondents.

## OPINION

YEGAN, J.—Joyce E. Penner appeals from a summary judgment granted to the County of Santa Barbara (County) in this action for a property tax refund. After Penner transferred real estate to a limited partnership wholly owned by herself and her adult children, the County issued a supplemental assessment increasing the property's assessed value from $337,276 to $2.3 million She argues that the reassessment violates California Constition, article XIII A, section 2, subdivision (h) (hereafter, section 2(h)), which provides an exemption from reassessment for certain transfers of real property ". . . between parents and their children, as defined by the Legislature . . . ." The County argued, and the trial court ruled, that the transfer was not exempt because Penner transferred the property to a partnership and not directly to her children. We affirm.

*Facts*

In May 1990, Penner and her son Stephen formed a limited partnership, Estrella Del Mar, Ltd., for the purpose of developing a three-acre parcel of land owned by Penner. Stephen was the general partner. Penner and her other children were the limited partners.

The partnership agreement provided that Penner would contribute the property, pay $123,500 in "debt service currently existing against the . . . property," and remain liable for any depreciation and operating losses suffered by the partnership. In exchange, Penner received the majority of the limited partnership interests and a share of the partnership's net profits. After the property was developed and sold, Penner would receive proceeds equivalent to the appraised value of the property before its development.

In December 1990, Penner deeded the property to the partnership. She then assigned to each of her four adult children a small percentage of her limited partnership interests.

The County assessor determined that the transfer constituted a change in ownership of the property. Accordingly, on June 10, 1991, the assessor made a supplemental assessment of the property, increasing its value for property tax purposes from $337,276 to $2.3 million.

Penner filed a "Claim for Parent/Child Exclusion" with the County, arguing that the December 1990 transfer was a transfer between a parent and her children which was exempt from reassessment under section 2(h). The County assessor denied her claim. Penner's application for a changed assessment was denied by the assessment appeals board for reasons not relevant to this appeal. Penner paid the taxes and filed this action for a refund.

The trial court elected to treat the County's demurrer and Penner's opposition as cross motions for summary judgment and granted judgment in favor of the County. It determined that the section 2(h) exemption did not apply to transfers between a parent and a partnership composed of the parent's children because the Legislature, in section 63.1 of the Revenue and Taxation Code, had unambiguously defined the term "children" to include only natural persons. The trial court rejected Penner's argument that the transaction was exempt because its end result was to transfer ownership of the property from herself to her children. It concluded instead that the use of the limited partnership could not be ignored because Penner probably could not have transferred the property directly to her children and achieved the division of profits, insulation from liability, and other advantages attributable to the limited partnership structure.

*The Issue*

█  The parties agree that this appeal presents a question of first impression: whether the exemption provided by section 2(h) applies to a transfer of real property by a parent to a limited partnership wholly owned by the parent and the parent's children. Penner argues that the exemption applies because section 2(h) was intended to protect from reassessment the transfer of real property between parents and children and that is exactly what her transaction accomplished. The County argues that the exemption does not apply because the partnership is not a child within the meaning of section 2(h) or Revenue and Taxation Code section 63.1.

*Standard of Review*

█  The question whether this transfer qualifies for the section 2(h) exemption is a question of law. (*Shuwa Investments Corp.* v. *County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1644 [2 Cal.Rptr.2d 783].) We independently review the trial court's legal conclusions. (*Pueblos Del Rio South* v. *City of San Diego* (1989) 209 Cal.App.3d 893, 899 [257 Cal.Rptr. 578].)

*Constitutional and Statutory Framework*

Article XIII A, section 1 of the California Constitution limits the maximum amount of any ad valorem tax on real property to 1 percent of the full cash value of that property. The "full cash value" of real property is either its assessed value as shown on the 1975-1976 tax bill or its "appraised value . . . when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment." (Cal. Const., art. XIII A, § 2, subd. (a).)

Section 2(h) was added to article XIII A of the Constitution in November 1986, when the voters approved Proposition 58. (See *Larson* v. *Duca* (1989) 213 Cal.App.3d 324, 328 [261 Cal.Rptr. 559].) It provides that the terms "purchase" and "change in ownership" do not include ". . . the purchase or transfer of the principal residence of the transferor in the case of a purchase or transfer between parents and their children, as defined by the Legislature, and the purchase or transfer of the first $1,000,000 of the full cash value of all other real property between parents and their children, as defined by the Legislature." (§ 2, subd. (h)(1).)

Revenue and Taxation Code section 63.1 defines the term "children," as required by section 2(h). The statutory definition includes "[a]ny child born of the parent or parents," any stepchild, son-in-law or daughter-in-law until termination of the marriage upon which the relationship is based, and any

child adopted by the parent before the child reached the age of 18. (Rev. & Tax. Code, § 63.1, subd. (c)(2).)

In interpreting section 2(h) of the Constitution and section 63.1 of the Revenue and Taxation Code, we look to the plain language of both the Constitution and the statute. (*Pacific Southwest Realty Co.* v. *County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) The words of section 2(h) must be given their ordinary and common meaning because they are presumed to have been so understood by the proposers and by the voters. (*Regents of University of California* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 660, 665 [140 Cal.Rptr. 857].)

*The Plain Language of Section 2(h) Applies Only to Natural Persons*

Section 2(h) refers to transfers of property between "parents" and "children." The plain meaning of both terms includes only natural persons with a familial relationship to one another. There is nothing in the language of section 2(h) to indicate that the voters intended to extend the protection of that section to partnerships in which family members invest their real property.

Penner argues that the December 1990 transfer should qualify for the exemption because the voters who approved section 2(h) intended to exempt from reassessment most transfers of real property between parents and their children. She relies upon portions of the ballot pamphlet arguments concerning Proposition 58 to support her understanding of the voters' intent.

"Ballot summaries and arguments are accepted sources from which to ascertain the voters' intent and understanding of initiative measures." (*In re Lance W.* (1985) 37 Cal.3d 873, 888, fn. 8 [210 Cal.Rptr. 631, 694 P.2d 744].) In the voter pamphlet, the Legislative Analyst explained that Proposition 58 would "broaden the circumstances under which reassessment is not required in cases involving the transfer of real property between parents and children." (Ballot Pamp. analysis of Prop. 58 by Legis. Analyst as presented to the voters, Gen. Elec. (Nov. 4, 1986).) Similarly, the arguments in favor of the proposition noted that it would avoid reassessment when parents who had purchased a first home for their children transferred title to the children and that it would "protect property transfers within the family." The arguments also noted that family farms and businesses are sometimes threatened by the death of a parent. Nothing in the summary or arguments, however, indicates that Proposition 58 was intended to shield from reassessment transfers of real property between natural persons and a partnership, a separate legal entity, owned by their family members. Instead, like the language of the proposition itself, the summary and arguments referred only to transfers of real property among parents and children.

*Revenue and Taxation Code Section 63.1 Properly Limits the Section 2(h)
Exemption to Natural Persons*

Penner next argues that Revenue and Taxation Code section 63.1 improperly limits the scope of section 2(h) by restricting the definition of "children" to natural persons. (Rev. & Tax. Code, § 63.1, subd. (c)(2).) The Legislature may not enact a statute "as an end run around the explicit language" of the Constitution. (*Larson* v. *Duca, supra*, 213 Cal.App.3d 324, 333.) Even if there were some ambiguity, "there is a strong presumption in favor of the Legislature's interpretation" of an unclear or ambiguous constitutional provision. (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 488 [229 Cal.Rptr. 324, 723 P.2d 64].) In light of that presumption, the Legislature's interpretation will not be disregarded unless there is a " '*plain and unmistakable* conflict between the statute and the constitution.' " (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 624 [194 Cal.Rptr. 294].) No such conflict exists here. Revenue and Taxation Code section 63.1 is a reasonable interpretation of the Constitution because it is consistent with the plain language of section 2(h).

*Reassessment Does Not Violate the "Step Transaction Doctrine"*

When it enacted Revenue and Taxation Code section 63.1, the Legislature declared that the section 2(h) exemption should apply where a parent transfers property from a legal entity owned by the parent, such as a partnership, to the parent and then to the children. In an uncodified section of the statute, the Legislature declared its intent that the transfer of real property from a legal entity to a parent who is the sole owner of the entity "shall be fully recognized and shall not be ignored or given less than full recognition under a substance-over-form or step-transaction doctrine, where the sole purpose of the transfer is to permit an immediate retransfer" from the parent to the parent's children. (Stats. 1987, ch. 48, § 2, p. 123.) Transfers between parents and children which are immediately followed by a transfer to a legal entity owned solely by the transferee "shall also be fully recognized . . . ." (*Ibid.*)

■ The parties agree that Penner could have avoided a reassessment if she had transferred the property to herself and her children and then to the partnership. Had she done so, the first step of this theoretical transaction would be exempt under section 2(h). The second step would not constitute a "change in ownership" for purposes of section 2(a) if the transfer changed only the method of holding title to the property and not the proportional ownership interests of the family members. (Rev. & Tax. Code, § 62, subd. (a)(2); *Zapara* v. *County of Orange* (1994) 26 Cal.App.4th 464, 467 [31 Cal.Rptr.2d 555].)

Penner argues that the same result should apply here. If she could have transferred the property through her children to the partnership without triggering a reassessment, then she should be able to transfer the property directly to the partnership and still avoid reassessment. She contends that any other result would be inconsistent with the "step transaction" doctrine of tax law.

The step transaction doctrine "is a corollary of the general tax principle [that] the incidence of taxation depends upon the substance of a transaction rather than its form. [Citation.]" (*Shuwa Investments Corp.* v. *County of Los Angeles, supra,* 1 Cal.App.4th 1635, 1648.) It treats a series of nominally separate transactional "steps" as a single transaction if the steps are, in substance, interdependent and focused toward a particular result. (11 Mertens, The Law of Federal Income Taxation (1992) § 43.253, p. 347.) Thus, if a taxpayer, rather than taking a direct route to the desired end, interjects economically or legally meaningless transactions between the starting point and the end to obtain more favorable tax treatment, the intervening transactions will be disregarded and taxes will be assessed as though the taxpayer had taken the most direct route. (See, e.g., *Commissioner* v. *Clark* (1989) 489 U.S. 726, 738 [103 L.Ed.2d 753, 766-767, 109 S.Ct. 1455]; *Associated Wholesale Grocers, Inc.* v. *U.S.* (10th Cir. 1991) 927 F.2d 1517, 1521-1522.)

The doctrine has no application here. Under the step transaction doctrine certain steps actually taken are ignored. The doctrine does not, however, allow a taxpayer to invent steps that never existed. (*Johnson* v. *C.I.R.* (7th Cir. 1983) 720 F.2d 963, 964.) Penner never transferred the property to her children. Neither party asks us to ignore transfers actually made by Penner. Instead, Penner argues that the tax consequences of her transaction should be determined by pretending that she took steps which, in reality, she did not. We cannot base our decision on hypotheticals. " '[A] transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.' " (*Don E. Williams Co.* v. *Commissioner* (1977) 429 U.S. 569, 579 [51 L.Ed.2d 48, 58, 97 S.Ct. 850].) Having chosen to transfer the property directly from herself to the partnership, Penner "must accept the tax consequences of [her] choice whether contemplated or not, [citations] and may not enjoy the benefit of some other route [she] might have chosen to follow but did not." (*Commissioner* v. *Nat. Alfalfa Dehydrating* (1974) 417 U.S. 134, 149 [40 L.Ed.2d 717, 727, 94 S.Ct. 2129].)

We also question whether Penner accurately describes the "end result" of her transaction. She did not give her children a percentage interest in real

property. She gave them each a more liquid and less risky form of property, i.e., a limited partnership interest. The children have a stake in the profits of the property without exposure to liability for its debts. In addition, they are able to sell their limited partnership interests more easily. The partnership agreement does not require that all partners be family members. It does not prohibit existing partners from selling their limited partnership interests to outsiders or from creating and selling additional partnership interests. Under many possible scenarios, the family members may be able to trade their partnership interests for cash and avoid reassessment by preventing any newcomer from obtaining "control" of the partnership. (See, e.g., Rev. & Tax. Code, §§ 62, 64.) This differs significantly from the straightforward parent to child transfers which section 2(h) and the Revenue and Taxation Code seek to protect.

Even if the "end result" of this transaction was, as Penner argues, to transfer real property to her children, recognizing that result would inevitably add yet another layer of complexity to the already Byzantine structure of California property taxes. As we read the Constitution and statutes, it is relatively simple to determine whether a transfer will qualify for the parent/child exemption. Property must be transferred from one natural person to another. One of those persons must be a parent and the other must be one of the persons described in Revenue and Taxation Code section 63.1, subdivision (c)(2).

Under Penner's reading of the same provisions, a partnership could be involved at either or both ends of the transaction. To determine whether the exemption applied, one would need to examine the identity of the natural persons who own the partnerships involved, their degree of control over the partnerships, and their familial relationship to the other natural persons involved. There is no reason to judicially impose this level of complexity on section 2(h) and Revenue and Taxation Code section 63.1 when the "plain meaning" of those provisions leads to a more predictable and straightforward result.

*Conclusion*

Revenue and Taxation Code section 63.1 properly interprets California Constitution, article XIII A, section 2, subdivision (h), the parent/child transfer exemption, to apply only to transfers of real property between natural persons. Accordingly, the trial court correctly ruled that Penner's transfer of the property to the partnership did not qualify for the exemption.

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 22, 1995.